669 P.2d 971

**John H. WINEINGER, Petitioner/Appellant,**

v.

**Betty W. WINEINGER, Respondent/Appellee.**

No. 2 CA-CIV 4595.

Court of Appeals of Arizona, Division 2.

March 30, 1983.

Rehearing Denied May 10, 1983.

Review Denied June 28, 1983.

Lieberthal & Kashman, P.C. by Howard A. Kashman, Tucson, for petitioner/appellant.

O'Dowd, Burke & Lundquist by Bruce A. Burke, Tucson, for respondent/appellee.

## OPINION

HOWARD, Chief Judge.

This is an appeal in a divorce case. Appellant-husband contends that the trial court erred in (1) awarding spousal maintenance to appellee-wife; (2) awarding the wife her attorney's fees; (3) establishing the method of payment of the wife's interest in retirement and stock fund, and (4) inequitably dividing the community property. We affirm.

The record shows that at the time of the divorce the parties had been married for 30 years. They had five children, all but one are adults. The husband, a medical doctor at the Thomas-Davis Clinic in Tucson, was 54 years of age and the wife was 56. She is a college graduate with a degree in sociology and psychology. She worked two years as a welfare case worker and then married appellant. She worked again as a case worker and file clerk while her husband went to medical school. In 1956 she quit working to have their first child and she had not worked since then, except for the last four years when she earned approximately $2,000 per year taking Japanese students on a tour. As of late, the wife's health has not been too good. In 1976 she had ·a stroke which temporarily paralyzed her. She is no longer paralyzed but does still experience some impairment of motor functions when fatigued and her handwriting becomes illegible.

Their living standard, while not sumptuous, was befitting the husband's position and salary. They lived in a four-bedroom house with a three-car garage and swimming pool on two and one-half acres of land in the Catalina Foothills area of Tucson. The three-car garage contained three automobiles. The husband made $68,286 less federal and state income taxes during the year preceding the divorce and his net monthly income at the time of the divorce was $3,315.

The major community assets were the equity in the house, which had an estimated value of $129,000 and a retirement plan and a stock plan, which the trial court valued at $108,383 and $4,000 respectively.

The trial court ordered that the home be sold and the proceeds split equally. It also made an equal split of the stock and retirement plans but, pursuant to stipulation of the parties, gave the husband a credit against the amount due the wife. The sum of $46,004 was then ordered to be paid by the husband to the wife within 24 months and the court awarded the plans to the husband as his sole and separate property.

The court, recognizing that there was a disparity between the value of the community property awarded to the wife, $131,-

316.50, and the award to the husband, $112,-853.50, stated in the judgment:

"The Court has taken into consideration the evidence with respect to the inequitable division of the community personal property (furniture and personal effects) by adopting the more conservative values for the profit sharing and stock redemption plan of the Thomas-Davis Clinic."

The trial court, in awarding the wife spousal maintenance in the sum of $1,000 per month stated:

"The Court further notes that under the testimony there is a substantial disparity in the earning capacity of the parties: the Petitioner's earning capacity being $60,000.00 plus; the Respondent's earning capacity being $7,500.00 to $10,000.00 per year. The Court has taken into consideration all of the factors set forth in A.R.S. § 25-319(B) and all of the testimony concerning the needs of the various parties. The Court believes that failure to award spousal maintenance under the circumstances of this case would be inequitable since it would be holding that the Petitioner-Husband may continue to accumulate toward his retirement and live on his present income, but the Respondent-Wife must use her retirement nest egg to live on supplemented by whatever modest income she may be able to generate. After a marriage of this duration such a holding would be clearly inequitable."

The trial court also awarded the wife her attorney's fees in the sum of $5,775, payable $1,755 by the husband to the wife's attorney forthwith and the balance payable out of the gross proceeds of the sale of the community home.

A.R.S. § 25-319(A) deals with spousal maintenance. It states:

"In a proceeding for dissolution of marriage . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including property apportioned to such spouse, to provide for his or her reasonable needs; and

(2) Is unable to support himself or herself through appropriate employment . . . or lacks earning ability in the labor market adequate to support himself or herself."

The husband contends that the trial court erred in granting spousal maintenance because (1) it never made the finding required under the above statute; (2) the wife is or can be self-supporting, and (3) the trial court used improper considerations in awarding the spousal maintenance and failed to take into account the property awarded to the wife. We do not agree.

■ The statute does not require that the court make any specific "findings." The word "finds" as used above is simply a synonym for "determines" or "decides." See *People v. Murphy*, 35 Cal.App.3d 905, 111 Cal.Rptr. 295, 309 (1973) and cf. *Justice v. City of Casa Grande*, 116 Ariz. 66, 567 P.2d 1195 (App.1977).

The issue then is whether the evidence supports an award of spousal maintenance in view of the statutory prerequisites. The husband contends that the evidence does not support such a showing since the property apportioned would provide for her reasonable needs and because the court found that she had an earning capacity of $7,500 to $10,000 per year. The husband further contends that the court's "nest egg" theory enunciated in the judgment does not fall within the factors which the court should consider in deciding the maintenance issue.

■ Although the trial court made a statement in the judgment about the wife's earning capacity, whether the capacity will result in any income is yet to be seen. A labor market consultant testified that the wife might be able to find work as a travel agent, if she first went to school at a cost of $2,500. The wife had been looking for work but had not been able to find anything as of the date of trial. For the past four years she had been receiving money for taking the Japanese students on a tour. The trial court was well aware of the fact that she

had not yet found employment, that she was not in the best of health, and more important, that she was 56 years old.[1] The wife stated that she needed $1,074 a month to live on and, of course, any amount that she received from her husband would be subject to state and federal taxation. What the court was really saying in its "nest egg" theory was that she did not have sufficient property apportioned to her to provide for her reasonable needs. She would have to live off both the principal and interest from the money, dissipating it to an extent that when she no longer had any earning capacity, there would be nothing left upon which she could draw.

Appellant also contends that the trial court erred in allowing the labor market analyst to testify as to how much money would be required per month to support a person at a relatively decent level. She testified that a net of $1,200 would be reasonable. It is appellant's contention that the labor market analyst was not qualified to give evidence as an expert on this subject since no foundation was made showing any expertise. Assuming, arguendo, that appellant is correct, this was a trial before the court and since there was sufficient evidence to sustain the trial court's awarding of the spousal maintenance it will be presumed that the court disregarded the incompetent evidence. *Boston and Arizona Smelting and Reduction Co. v. Lewis,* 3 Ariz. 5, 20 Pac. 310 (1889).

Appellant next contends the trial court erred in granting the wife attorney's fees. The awarding of such fees is within the court's discretion. *Luna v. Luna,* 125 Ariz. 120, 608 P.2d 57 (App.1979). The husband was not ordered to pay all of the fees as the court ordered the major share to be paid from the gross proceeds of the house sale. Since half of the house proceeds were awarded to appellee, appellant, in effect, was ordered to pay $2,000 of the last $4,000. So the question is whether the trial court erred in awarding the fees and whether the

sum of $3,750 is excessive. Viewing the entire record, we are unable to say that the trial court erred in awarding appellee attorney's fees and in the amount awarded.

The husband contends that the trial court erred in awarding appellee the $46,000 for her interest in the retirement and stock fund within 24 months. He contends that the trial court abused its discretion by awarding his wife a cash sum rather than ordering him to pay her her share of the retirement benefits as he receives them. We do not agree. The present cash value method is preferred if the pension rights can be valued accurately and if the marital estate includes sufficient equivalent property to satisfy the claim of the non-employee without undue hardship to the employee-spouse. *Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705 (1981). It is obvious that the trial court deferred the payment of the sum for two years since it was of the opinion that the amount could be paid out of the husband's share of the proceeds from the house sale. In other words, he gave the parties two years to sell the house so that the sum could be paid. The trial court did not err. *Johnson v. Johnson,* supra.

The husband's last contention is that the trial court erred in its unequal division of the community property. We do not agree. The trial court is not required to divide community property exactly equally. However, it cannot, without reason, create a gross disparity or make its award arbitrarily. In the absence of sound reasons appearing in the record which justify contrary results, apportionment of community estate upon dissolution must be substantially equal. *Buttram v. Buttram,* 122 Ariz. 581, 596 P.2d 719 (App.1979); *Tester v. Tester,* 123 Ariz. 41, 597 P.2d 194 (App. 1979). The husband was awarded 46 per cent of the community property and the wife was awarded 54 per cent. The trial court recognized the disparity and in its judgment noted that it had adjusted for

1. For a short analysis of some of the employment problems of the older worker, see 3 Lar- sen, Employment Discrimination § 98.20.

this disparity by arriving at a very conservative value for the present value of the retirement and stock fund. Appellant also contends the trial court erred in failing to give him an additional share of the community property to reimburse him for $26,000 of his separate property which he spent for community bills during the marriage. We do not agree since there was no evidence of any agreement to reimburse. See *Baum v. Baum,* 120 Ariz. 140, 584 P.2d 604 (App. 1978). The trial court did not abuse its discretion in dividing the community property.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.