690 P.2d 105

**In re the Marriage of Joanne P. THOMAS, Petitioner-Appellee,**

v.

**Gerald E. THOMAS, Respondent-Appellant.**

**1 CA–CIV 6385.**

Court of Appeals of Arizona, Division 1, Department A.

July 20, 1984.

Tilker, Ranger & Nearhood by James R. Nearhood, Scottsdale, for petitioner-appellee.

Norton, Burke, Berry & French by John R. Fox, Phoenix, for respondent-appellant.

## OPINION

GRANT, Judge.

This is a domestic relations case in which we are asked to consider the following issues: (1) Was there an abuse of discretion in the award of spousal maintenance to the wife? (2) Was there an abuse of discretion in the distribution of an account at E.F. Hutton? and (3) Was there an abuse of discretion in awarding the wife attorney's fees and costs in the trial court?

The parties had been married for 32 years. Their five children had all reached the age of majority by the time of trial. The wife was 56 years old and the husband was 59 years old. The parties had separated prior to trial and the wife had established residence in San Diego, California. Although the wife had never been gainfully employed outside the home during the marriage, she had secured a temporary part-time job as a hostess in a restaurant three weeks prior to trial. She worked 20 hours a week earning approximately $3.75 an hour. She had no health problems. The husband, on the other hand, had been employed by the Campbell Soup Company during most of the marriage. He had risen to the position of national director of marketing for frozen foods. However, in 1970 he had suffered a major heart attack which caused him to leave Campbell Soup Company and become an independent consultant.

The parties moved to Arizona in 1977. Between 1970 and 1977 the husband had been an independent consultant for businesses and art galleries in the East. From 1978 through 1980 the husband consulted with a company called Western American Heritage Prints in Arizona. At the same time he was winding down his consultation with companies in the East. He also began working with a small Arizona company known as Ventures West. According to the husband, he was provided office space, access to secretarial help, office supplies, telephone answering service, and medical insurance for the family as the only compensation for his services to this company. In 1980 the husband underwent a triple bypass operation. Apparently during the years 1980 and 1981 the parties' living expenses were met primarily by the liquidation of community assets.

At the time of trial the parties had accumulated approximately $307,000 in an account at the Arizona Bank. They also had collected certain works of art estimated by the husband to be worth approximately $40,000. Each had a late model automobile which was fully paid for. In the husband's affidavit filed at the time of trial the husband listed his anticipated expenses as approximately $1,376 per month. The wife in her affidavit filed at the time of trial stated that her monthly living expenses were $1,725.

The trial judge divided the community assets between the parties including $23,521 which was in an account at E.F. Hutton and which the husband claimed as his separate property. The trial judge also found that the wife lacked sufficient property, including property apportioned to her, to provide for her reasonable needs and that she temporarily lacked earning ability in the labor market adequate to support herself. He therefore awarded her spousal maintenance in the sum of $1,000 a month for a period of three years. The court also ordered the husband to pay to the wife for attorney's fees and costs the sum of $7,500.

## I. SPOUSAL MAINTENANCE

The husband claims that the wife does not meet the statutory requirements for spousal maintenance set forth in A.R.S. § 25–319(A) and therefore the trial court's award was impermissible. *See Neal v. Neal*, 116 Ariz. 590, 570 P.2d 758 (1977). The husband claims that the wife had suffi-

cient property apportioned to her to provide for her reasonable needs.

Pursuant to the property award, the wife is to receive $153,500 from the Arizona Bank account, her personal jewelry which the husband estimates to be worth $11,000, works of art which the husband estimates to be worth $25,000, and one-half of the husband's pension in the amount of approximately $111 per month. In addition she was awarded approximately $11,760 from the account with E.F. Hutton. The wife's expert witness, Mr. David L. Markstein, testified that at the minimum rate of return the wife could receive a yearly income in excess of $21,500 ($1,800 per month) based on a principal of $148,858. Therefore, it is argued that, even considering some tax liability, she would apparently have sufficient assets, which, when properly invested, would produce sufficient income to meet her reasonable expenses. Therefore, claims the husband, it was an abuse of the trial court's discretion to award her spousal maintenance of $1,000 per month for three years. He claims that such an award cannot be supported by the evidence.

The evidence showed that while the wife enjoyed good health, the husband had for many years suffered from coronary artery disease. This disease had apparently become a major factor in his ability to earn income. He claimed that his only source for the payment of the spousal maintenance would be out of the property apportioned to him at the trial. Therefore, he asserted that he was just as dependent as his wife on the financial assets of the community. He alleges that the financial resources of the parties were sufficient to provide for both parties' reasonable needs. Each of the parties he asserts, is free to seek additional income through employment if either so desires.

The husband also claims that the length of spousal maintenance was not supported by evidence presented at trial. The wife gave no testimony at trial of the amount of time necessary to acquire sufficient education or training to enable her to find appropriate employment. Indeed she did not indicate any specific plan of education or training.

The wife responds by stating she became confused when testifying at trial about the amount of her estimated monthly expenses. The record supports this. She claims her expenses are higher than she originally stated in her spousal affidavit. She also states that the husband does not take into account the income tax consequences associated with the funds she received as the result of the dissolution and the income she can be expected to derive therefrom. The $307,000 in the Arizona Bank was money derived from the sale of the parties' residence. The parties realized a net profit of $287,000 on this sale. The evidence was that this sale resulted in a capital gain to the parties of approximately $160,000. The remaining balance in the joint account of $20,000 was accrued interest. For income tax purposes the wife claims she is obligated to pay one-half of the capital gains tax on $160,000 and income tax on one-half of the accrued interest ($10,000). All of this she claims would leave her with a net account of approximately $140,000. The highest estimate of her monthly expenses was approximately $1,820 plus $100 for medical insurance for a total of $1,920. Her total annual income would come to $26,688[1] which equals $2,224 per month before income taxes. Added to the $2,224 is $111 per month from the retirement pension for a total of $2,335 a month before taxes. Estimates of her *after* tax income were, however, under $1,920. Therefore she claims that property awarded her is not sufficient to meet her monthly expenses. Additionally, she states that should her income remain constant, inflation would cause the gap between her income and her monthly expenses to widen to a deficit of approximately $540 per month by October, 1984, the date that spousal maintenance terminates. The wife also claims that giv-

---

**1.** This income is comprised of $21,675 in interest and $5,103 in wages. The interest is based on an assumption of tax liability reducing the wife's principal to approximately $148,858.

en her age of 56 years and her lack of previous employment experience it will be difficult to obtain a better employment situation than she currently has. *See Mori v. Mori,* 124 Ariz. 193, 603 P.2d 85 (1979).

The issue then is whether the evidence supports an award of spousal maintenance in view of the statutory prerequisites. An award of spousal maintenance will not be disturbed if there is any reasonable evidence to support the judgment of the trial court. *Nelson v. Nelson,* 114 Ariz. 369, 560 P.2d 1276 (App.1977). In reviewing a decision after trial to the court, the evidence must be "taken in the strongest manner in favor of the appellee, and if there is any reasonable evidence to support the judgment of the lower court, it will be sustained." *Rossi v. Stewart,* 90 Ariz. 207, 209, 367 P.2d 242, 244 (1961). An appellate court may "infer from any judgment the findings necessary to sustain it if such additional findings do not conflict with express findings and are reasonably supported by the evidence." *Wippman v. Rowe,* 24 Ariz.App. 522, 525, 540 P.2d 141, 144 (1975). *See also Hueg v. Sunburst Farms,* 122 Ariz. 284, 594 P.2d 538 (App. 1979).

In analyzing an award of spousal maintenance we apply a two step analysis. First, this court must determine from the record whether the spouse awarded maintenance meets the statutory requirements for maintenance set out in A.R.S. § 25–319(A). Second, we must review the amount and duration of the award to determine whether the trial court properly considered the factors listed in A.R.S. § 25–319(B).

The record reasonably supports the conclusion that the wife lacks sufficient property to provide for her reasonable needs and is unable to support herself fully in the appropriate manner. The wife estimated her aggregate reasonable monthly needs to be $1,920. Neither the husband,

nor the dissent seriously question this amount.

The other component necessary for eligibility for spousal maintenance is inability to support one's self through employment and/or from apportioned property. A.R.S. § 25–319(A). The record reveals the lower court apportioned the wife $165,260 in liquid funds,[2] a one-half interest in husband's pension worth $111.00 per month, plus clothing, jewelry, artwork, and an automobile. Unlike the dissent we do not consider at all the husband's valuation of the artwork, since the trial court found the husband was not a credible witness. Subtracted from this amount should be the wife's tax obligations on $80,000 in capital gains and on $10,000 ordinary income.

The record reasonably supports the following scenario. After payment of the wife's tax obligations on apportioned property, the remaining apportioned property[3] can generate annually $21,675 in interest. With annual wages of $5,103, her total annual income would be $26,688, which equals $2,224 per month. Adding the $111 from the pension obtains a gross monthly income of $2,335. If we stop here in our analysis, as the husband urges and the dissent does, we could conclude that spousal maintenance is inappropriate. However, estimates of the wife's after tax income were under $1,920. Therefore, the wife is eligible for an award of spousal maintenance. Additionally, we need not consider the income from wife's employment as a part-time waitress because it is of such short duration and it is not "appropriate employment" within the meaning of A.R.S. § 25–319(A)(2) under the totality of circumstances of this case.

First, we note that the trial judge realized and the record clearly reveals a substantial disparity in the parties' ability to earn income in the labor market. On the one hand we have an unsophisticated, uned-

---

**2.** This is comprised of $153,500 held in the Arizona Bank account and $11,760 in the E.F. Hutton account.

**3.** The wife would have $165,260 to satisfy the tax on $42,000 ($10,000 plus 40% of $80,000). We feel it would therefore be reasonable to use the $148,858 figure employed by the expert witness Markstein.

ucated 56-year-old woman who had never been in the labor market during her adult life as compared to a 59-year-old sophisticated experienced businessman who had been in a high powered executive position or independent consulting position for over 30 yers. Secondly, the trial judge found, and the record is replete with evidence that the husband was not a credible witness, that he secreted assets, that he lied about his income not only during this trial but on various income tax returns. Therefore, the record regarding the income of the parties prior to divorce and regarding the husband's ability to earn income is not reliable. The trial judge as well as this court need not be blind to the fact that an inexperienced untrained 56-year-old woman can usually enter the labor market only on the lowest rung of the ladder, if at all. *Mori v. Mori.* In addition, given the wife's inexperience in financial matters she may well have difficulty skillfully managing the property that is set aside as her one-half of the community assets. The husband, on the other hand, having had full control of the family finances during the entire marriage may be expected to develop his assets into a even more substantial financial position.

We find applicable language from the trial court as quoted by Division Two of this court in the case of *Wineinger v. Wineinger,* 137 Ariz. 194, 669 P.2d 971 (App. 1983):

> The Court believes that failure to award spousal maintenance under the circumstances of this case would be inequitable since it would be holding that the Petitioner-Husband may continue to accumulate toward his retirement and live on his present income, but the Respondent-Wife must use her retirement nest egg to live on supplemented by whatever modest income she may be able to generate. After a marriage of this duration such a holding would be clearly inequitable.

*Id.* at 197, 669 P.2d at 974. As Division Two of this court held in *Wineinger* the wife should not be expected to live off both the principal, and interest, exhausting whatever financial reserves she possesses to the extent that when she no longer had any earning capacity there would be nothing left upon which she could draw. *Id.* at 198, 669 P.2d at 975.

■ Our supreme court has held that the word "support" as used by A.R.S. § 25–319(A) must be construed in light of the factors set forth in A.R.S. § 25–319(B). *Sommerfield v. Sommerfield,* 121 Ariz. 575, 592 P.2d 771 (1979). That court declined to read A.R.S. § 25–319(A)(2) as foreclosing the possibility of any maintenance whatsoever unless a spouse is totally incapable of self-support. *Id.* Therefore, the receiving spouse's ability to earn income must be considered in light of some reasonable approximation of the standard of living established during the marriage.

We also note that the trial court specifically reserved jurisdiction to increase or decrease the amount of maintenance and to shorten or lengthen the term set for maintenance. We hold that not only does the evidence support the granting of the maintenance under the total circumstances of this case, but the reservation of jurisdiction with the trial court was proper. *See Lindsay v. Lindsay,* 115 Ariz. 322, 565 P.2d 199 (App.1977).

■ As this court made clear in *Lindsay,* while encouraging a wife to seek employment is a worthy purpose, a judgment cannot be based upon mere hopes and speculative expectations. *Id.* It is also clear from *Lindsay* that the wife is not to be forced by the judgment of the trial court into seeking *any* employment but to seek "appropriate" employment. *Id.* Here the record clearly establishes that the parties lived in a $480,000 home in Paradise Valley. Indeed the husband continues to live in that home under some sort of leaseback arrangement with the buyers. These parties enjoyed a very high standard of living. Should the wife then be forced to live at a standard of living which she is able to provide herself through consumption of her assets and employment as a waitress at the minimum wage? We think not and therefore hold that the spousal maintenance

granted here was clearly within the discretion of the trial court.

■ As we said in *Lindsay:*

[T]he sound public policy involved in fixed-term rehabilitative spousal maintenance awards which, under appropriate circumstances, may provide an incentive for one receiving spousal maintenance payments to use diligence in procuring the requisite training and skills so as to become self-sustaining. However, this underlying public policy must be balanced with some realistic appraisal of the probabilities that the receiving spouse will in fact subsequently be able to support herself in some reasonable approximation of the standard of living established during the marriage, especially when a marriage of long-term duration is involved and the employment history shows a long-term absence of the spouse from the labor market with the lack of a presently existing employment skill.

*Id.* at 328, 565 P.2d at 205. Contrary to the dissent, we do not think it against public policy or the intent of the legislature when there has been a marriage of long duration during which the parties have contracted to perform certain roles mutually benefitting the community, to provide support until the roles can be changed. Spousal maintenance recognizes this need. Finally, we refer to A.R.S. § 25–319(B)(7) which focuses the court's attention on:

Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.

Here the record reveals that the husband misrepresented income and attempted to conceal assets. The trial court may properly take such behavior into account in awarding spousal maintenance as well as in the division of assets. *Sommerfield v. Sommerfield.*

## II. DISTRIBUTION OF E.F. HUTTON ACCOUNT

■ On appeal we view all evidence and reasonable inferences therefrom in the light most favorable to supporting the decision of the trial court regarding the nature of property as community or separate. *Sommerfield v. Sommerfield.* The trial court determined that the $23,521 in an E.F. Hutton account constituted community funds and that each party was entitled to one-half thereof.

■ The husband admits by his own testimony that this was an account which he secreted from his wife and kept from her knowledge. In interrogatories and other discovery proceedings he did not reveal the account. In order to avoid revealing that the account existed the husband had withdrawn all of the funds and put them in the form of a cashier's check made payable to himself which he held. At his deposition he was confronted with the fact that this account existed by the wife's attorney. We have reviewed the record as to this issue and find that the husband's testimony is so contradictory and lacking in credibility that the trial court properly rejected it, and therefore he failed to prove by a preponderance of the evidence that the account was his sole and separate property.

■ Property acquired by either spouse during marriage is presumed to be community property, and the spouse seeking to overcome the presumption has the burden of establishing a separate character of the property by clear and convincing evidence. *Cockrill v. Cockrill,* 124 Ariz. 50, 601 P.2d 1334 (1979). The husband has failed to overcome the presumption.

## III. ATTORNEY'S FEES AND COSTS IN THE TRIAL COURT

■ The trial court made the following order:

Respondent is ordered to pay to Petitioner as and for her contribution toward her attorney's fees and costs, the sum of $7,500.00 which the Court awards because of the disparity of income, earning capacity, and the difficulty of discovery needed to locate Respondent's assets. See *Mori v. Mori,* 124 Ariz. 193, 603 P.2d 85 (1979)....

The husband argues that an order for payment of attorney's fees must be based on the need of the party seeking the order and the ability of the other party to pay. *See Nesbitt v. Nesbitt,* 1 Ariz.App. 293, 402 P.2d 228 (1965). He claims that no testimony was presented by the wife as to her inability to pay her attorney's fees from the distribution of the property awarded to her at the time of trial. As we have previously mentioned in this opinion the husband concealed marital property and concealed income which he had received in recent years. At trial his testimony was evasive, unresponsive, implausible, and at times obviously untruthful. This husband's behavior caused the trial to last six days.

The wife's affidavit established the amount of attorney's fees incurred by her to the date of trial and her attorney's estimate of fees through trial. We find no abuse of discretion in awarding the wife attorney's fees. *See Mori v. Mori.* For the same reasons the wife will be awarded attorney's fees and costs of this appeal. The wife's attorney is directed to file an affidavit of fees and costs pursuant to *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983). Judgment affirmed.

BROOKS, P.J., concurs.

CONTRERAS, Judge, dissenting.

In my opinion there was a clear abuse of discretion by the trial court in entering an award for spousal maintenance. When the trial record and the statutory prerequisites are conjunctively and objectively considered the conclusion is inevitable—spousal maintenance in this case is impermissible and should not have been awarded to the wife.

The basic predicate for an award of spousal maintenance is the necessity for a spouse to meet the statutory requirements with the corresponding postulate being that spousal maintenance is impermissible unless a spouse meets the requirements of A.R.S. § 25–319(A). *Deatherage v. Deatherage,* 140 Ariz. 317, 681 P.2d 469 (Ariz.

App.1984); *In re Marriage of Hinkston,* 133 Ariz. 592, 653 P.2d 49 (App.1982). *See also Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977). A.R.S. § 25–319(A) provides:

A. In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse *only if* it finds that *the spouse* seeking maintenance:

1. *Lacks sufficient property, including property apportioned to such spouse,* to provide for his or her reasonable needs; *and*

2. Is unable to support himself or herself through appropriate employment or is the custodian of a child whose age or condition is such that the custodian should not be required to seek employment outside the home or lacks earning ability in the labor market adequate to support himself or herself. (emphasis added)

In accordance with the clear statutory language it was necessary for the trial court, based on the evidence presented, to find that the wife lacked sufficient property to provide for her reasonable needs and was unable to support herself through appropriate employment or lacked earning ability in the labor market to support herself prior to awarding maintenance. *Deatherage v. Deatherage, supra.* Wholly aside from the employability factor, in my opinion, it affirmatively appears from the record that the wife by reason of the property apportioned to her in this proceeding possesses "... sufficient property, including property apportioned to such spouse to provide for ... her reasonable needs." A.R.S. § 25–319(A)(1).

In order to determine whether the majority's conclusion is sound, the interdependent statutory factors of (1) reasonable needs and (2) sufficient property apportionment must withstand record review scruti-

ny. I don't believe the majority's conclusion withstands such scrutiny.

Turning first to reasonable needs. The wife's written spousal affidavit lists her reasonable monthly expenses as $1725. She did testify that she omitted the cost of health insurance which she estimated at approximately $100 per month. This amended figure of $1825 per month became suspect at trial since certain items in the affidavit appeared to be nonrecurring, improperly allocable expenses. In addition the wife, at times during the trial, stated that $1600 or even $1500 per month would be reasonable to meet her anticipated expenses. However, aside from these admissions against interest and arguably improperly listed monthly expenses, the figure of $1825 per month, for purposes of this judicial review, will be accepted as the monthly amount needed to provide for her reasonable needs.

The next consideration is the sufficiency of property available to her to meet her reasonable needs. The wife received one-half of the monies deposited with the Arizona Bank of approximately $307,000, i.e., she received $153,500. She was also awarded approximately $11,760 from an account with E.F. Hutton and Company, Inc. which, although asserted by the husband to be separate property, was properly considered by the trial court as community property subject to apportionment. She also received works of art with a value of $20,000 to $25,000. Placing the value of the art works at the low end of the scale ($20,000) it is clear from the record that the wife has property valued at $185,260, the substantial majority of which is "liquid." The wife is also to receive one-half of the husband's pension in the approximate amount of $111.00 per month. In addition she received clothing, jewelry and an automobile which was free and clear.

As acknowledged by the majority, the wife's expert witness testified that at the *minimum* rate of return the wife could receive a yearly income in excess of $21,500 ($1800 per month) based on a principal of $148,858. In addition she will receive

$111.00 per month from the husband's pension. It seems obvious, from a most conservative view point, that the wife will be receiving over $1900 per month without touching the principal and without considering any income from her employment, a factor I have not considered although she testified she was employed and was receiving limited income. Depending upon one's perspective such additional employment income would be frosting on the cake or salt in the wound. Furthermore, although the trial court retained jurisdiction to increase or decrease the amount of maintenance and to shorten or lengthen the term set for maintenance, it would appear, as a practical matter, that there will not be a decrease or shortening of the term set for spousal maintenance. I state this for the reason that if the wife, during the three years, was able to secure gainful employment of any consequence she would risk a loss or decrease in the maintenance award. This appears to be a counterproductive incentive which would have the resultant effect of encouraging her to not seek or obtain employment for the three year period.

The underlying policy of our statutory scheme for dissolution of marriage is to disentangle and separate the lives of the two spouses upon dissolution. Public policy favors rehabilitative, or fixed term, spousal maintenance awards so as to encourage the party receiving the award to use diligence in obtaining training and skills so that he or she will become financially self-supportive and thereby be able to meet his or her reasonable needs. *Lindsay v. Lindsay,* 115 Ariz. 322, 565 P.2d 199 (App.1977). However, as previously pointed out, this public policy is predicated upon the statutorily imposed requirements that spousal maintenance is impermissible unless a spouse meets the requirements of A.R.S. § 25–319(A). *Deatherage v. Deatherage, supra; In re Marriage of Hinkston, supra.* It would thus appear to be contrary to public policy to permit an able-bodied spouse to continue to live off the labors of the other when such spouse by reason of the property apportioned has sufficient property to provide for current reasonable

needs. Under the attendant facts as established by the evidence, public policy is not served when an award of this nature is made.

In any event, my review of the record leads me to conclude that the trial court was presented with evidence that the wife will have, at a bare minimum, a monthly income of $1900 with monthly expenses of either $1725 (as shown by the carefully prepared spousal affidavit) or $1600 (as she testified to at trial) or even $1920 as the majority somehow discerns. Based on this record, I cannot perceive how spousal maintenance would be permissible since, clearly, the wife does not meet the requirements of A.R.S. § 25–319(A) for any amount, let alone $1000 per month for three years. I therefore end up where I started. In my opinion, it was a clear abuse of discretion for the trial court to award spousal maintenance.