BREARCLIFFE, Judge, concurring in part and dissenting in part:
¶ 20 I concur in the opinion as to the issue of equalization credit and in its denial of appellee's request for attorney fees. I respectfully dissent from the opinion as to spousal maintenance and would affirm the lower court decree as a whole.
Sufficient Property
¶ 21 The majority primarily concludes that the trial court failed to make a finding under A.R.S. § 25-319(A)(1) that Cotter had sufficient property to provide for her reasonable needs "during ... her lifetime." The majority concludes that "[p]ursuant to 25-319(A), the court may grant an award 'if it finds that the spouse seeking maintenance ... [l]acks sufficient property ... to provide for [his or her] reasonable needs.' " The majority then goes on to describe what "sufficient property" means, and then to explain over what period the court must find the property to be sufficient. The majority concludes that a spouse seeking maintenance is eligible for maintenance if she does not have property "of such value that it could provide for her reasonable needs without supplement," and "of such value that the spouse would be unlikely to exhaust it in his or her lifetime." This is incorrect and arises from the majority's misreading of the effect of two cited cases- Deatherage and Wineinger .[8]
¶ 22 In Deatherage v. Deatherage , the wife requesting maintenance received in the decree cash and bank deposits totaling approximately $54,000, stock worth approximately *265 $13,700, a receivable worth approximately $9,000, five acres of undeveloped real property having an equity value of approximately $77,000, and had reconfirmed to her as her separate property a five-acre parcel of undeveloped real property valued at $95,000. 140 Ariz. 317, 319, 681 P.2d 469 (App. 1984). The wife was granted maintenance, but the husband appealed, arguing that the court had failed to consider the wife's property that was not then producing income, but which was capable of such. Id . The wife took the position that the court should not consider her non-income-producing property in the eligibility determination because, if it did, "the courts would require a spouse to change the nature of the property apportioned to that spouse and enter the arena of property management, investment counseling and tax consulting." Id . at 320, 681 P.2d 469.
¶ 23 The Deatherage court held, however, that "by considering non-income producing property in determining eligibility to receive maintenance, the spouse may be indirectly influenced to either borrow against the equity in the property or convert the property into a form which yields income.... [T]his is the result which inevitably flows from the statutory language in issue." Id ."Wife is not being required to 'use up' her property. The trial court is merely required to consider the income potential of the property as a factor in determining (a) whether a spouse is entitled to spousal maintenance; and if so (b), what amount." Id . at 321, 681 P.2d 469.
¶ 24 The Deatherage court then held that maintenance was appropriate but only for a reasonable period during which the wife could convert her non-income-producing property into income-producing property to meet her reasonable needs. Id . at 320, 681 P.2d 469. The majority reads this, inaccurately, to mean that "the court contemplated that a spouse might need to convert non-income-producing property into income-producing property or sell, encumber or otherwise dispose of it to provide for herself." And that "[u]nderlying these possible courses of action is the implicit determination that the property at issue was of such a value that it could provide for her reasonable needs without supplement." These conclusions are inaccurate because the Deatherage court held just the opposite-that a spouse should not be expected to "dispose" of non-income-producing property to provide for herself, but instead, simply to convert it to income-producing property. Deatherage expressly disclaimed the principle that the awarding court should expect the requesting spouse to exhaust or "use up" the assets themselves over time to provide for herself.
¶ 25 In Wineinger v. Wineinger , the wife was awarded certain property in the decree and she was also awarded spousal maintenance because the court determined that the awarded property was insufficient to meet her reasonable needs. 137 Ariz. 194, 196-97, 669 P.2d 971 (App. 1983). The husband argued that what she received in assets plus her ability to work made her ineligible. Id. at 197-98, 669 P.2d 971. The trial court had used the phrase "nest egg" in its determination that the wife would have to invade her assets, that is, her "nest egg," to provide for her reasonable needs. Id. at 197, 669 P.2d 971. The husband argued, in essence, that the trial court should not have considered dissipation of the wife's "nest egg," in the eligibility determination. Id. at 197-98, 669 P.2d 971. The appeals court disagreed. Id. at 198, 669 P.2d 971.
What the [trial] court was really saying in its "nest egg" theory was that she did not have sufficient property apportioned to her to provide for her reasonable needs. She would have to live off both the principal and interest from the money, dissipating it to an extent that when she no longer had any earning capacity, there would be nothing left upon which she could draw.
Id.
¶ 26 The Wineinger court then, because using the principal of her accumulated assets to meet her reasonable needs would "dissipate" them over time, affirmed the wife's eligibility for maintenance under § 25-319(A)(1). Id. at 199, 669 P.2d 971. The majority here reads Wineinger to mean that "for the limited purposes of an eligibility determination, sufficient property [must be] of such value that the spouse would be unlikely to exhaust [the asset principal] in his or her lifetime." This, again, is contrary to its *266 actual reasoning that a spouse should not be expected to live off and dissipate the principal of his or her assets for any period of time.
¶ 27 The majority then goes on to read these cases together to mean that, for the purposes of § 25-319(A)(1), "sufficient property means property that, standing alone, can provide for a spouse's reasonable needs during his or her lifetime." This conclusion is faulty, or, at least, so unclear as to risk misapplication.
¶ 28 Deatherage stands for nothing more than the proposition that a party's assets must be considered for their current income-producing potential even if they are not currently producing income . The Deatherage court looked at the requesting spouse's assets and determined that, within two years, she could reasonably begin earning income on her property. Deatherage , 140 Ariz. at 321, 681 P.2d 469. Once she did so, the property would generate enough income to meet her reasonable needs, such that she would, in all likelihood, no longer be eligible for support. Id. Wineinger stands for nothing more than that a spouse is not required to exhaust his principal assets to meet his reasonable needs. Instead, the court should determine eligibility on the income-earning potential of the property, such that any "nest egg" of assets-the asset principal-is not reduced to meet the spouse's reasonable needs. It is not that the court must be able to find that asset principal, if drawn down on, could hold out to the last dollar until the spouse dies, but rather, with the principal remaining intact, if the asset can produce a regular income stream to meet the spouse's reasonable needs.
¶ 29 The majority sows further confusion by compelling courts, in the eligibility determination, to determine at what point "during his or her lifetime" the spouse's assets might be exhausted. That is, the opinion's reasoning will require courts, in examining the sufficiency of a requesting spouse's assets, to look down the road and predict, based on the spouse's reasonable needs, when the money will run out. Both a spouse's "reasonable needs" and his or her ability to provide for them should be determined as of the day of trial. Unless a statute clearly states to the contrary, we read statutes as referring to the present tense. See, e.g. , State v. Hinden , 224 Ariz. 508, ¶¶ 8-10, 233 P.3d 621 (App. 2010) (property must be currently being used for commercial purpose to be deemed commercial yard for criminal statute); State v. Taylor , 216 Ariz. 327, ¶¶ 20, 23, 166 P.3d 118 (App. 2007) (concluding present tense use in statute and rule means only defendant's current financial resources relevant to determining amount of reimbursement for public defender representation); Town of Wickenburg v. State , 115 Ariz. 465, 468, 565 P.2d 1326 (App. 1977) (deciding present tense use in declaratory judgment statute means rights must currently be affected for justiciable controversy to exist). Indeed, because spousal maintenance is modifiable in amount and duration after it is awarded, courts need not look down the road to changing circumstances at the time of the award. A.R.S. § 25-319(D). But even as to eligibility in the first instance, courts may not base the eligibility for an award of maintenance on unforeseen circumstances that may yet arise.
¶ 30 In Neal v. Neal , the trial court awarded the requesting spouse one dollar in spousal maintenance as a way of "holding open the courtroom door for possible changes of circumstances." 116 Ariz. 590, 592, 570 P.2d 758 (1977). This was error. Id. at 593, 570 P.2d 758. Our supreme court stated that "[t]he bonds of marriage are erased upon dissolution, and unless a spouse meets the requirements of A.R.S. § 25-319(A)at that time , spousal maintenance is impermissible." Id. at 592-93, 570 P.2d 758 (emphasis added). "Any attempt to avoid the total severance of the marital bonds through the device of unjustified nominal spousal maintenance, enabling a party to later return for a greater award in the event of some unforeseen circumstance, can only be viewed as an evasion of the clear" legislative mandate of § 25-319. Id . at 593, 570 P.2d 758. Because the wife was not eligible for maintenance at the time of trial , the award of maintenance was error. Id.
¶ 31 Sherman v. Sherman , 241 Ariz. 110, 384 P.3d 324 (App. 2016), was not an eligibility case, but instead focused on amount. In Sherman , the trial court awarded the requesting *267 wife a nominal amount of maintenance because, though the husband was at the time of trial unable to work, it speculated that the husband would one day be able to work and pay maintenance. Id. ¶ 7. This would allow the trial court to later modify the award. Id. The court concluded that the trial court improperly awarded nominal maintenance "based on the assumption that a meaningful award may later become appropriate under § 25-319(B)." Sherman , 241 Ariz. 110, ¶ 19, 384 P.3d 324.
¶ 32 The majority's reasoning leads to the conclusion that a trial court is to look down the road in analyzing how long and at what point "during his lifetime" a requesting spouse's assets will run out. The danger is that courts will read this to mean that a spouse should be expected to spend down his principal assets so long as they last a sufficient length of time. This danger is avoided if the court looks only to the income currently produced by, or the current income potential of, a requesting spouse's principal assets, and, in light of that (and other income sources), whether such meet his reasonable needs at the time of trial. This is what the statute and our case law tells courts to do. The trial court here was only required to determine whether Cotter had sufficient income, or present income potential, from her property or an income source otherwise to meet her reasonable needs at the time of trial.
Remand for Further Findings
¶ 33 The trial court determined that Cotter was not eligible for spousal maintenance under A.R.S. § 25-319, but did not make a specific finding as to why she was ineligible. The majority concedes that § 25-319 does not require that a court make an express finding as to the reason for ineligibility. Wineinger , 137 Ariz. at 197, 669 P.2d 971 ; Higgins v. Higgins , 154 Ariz. 87, 88, 740 P.2d 508 (App. 1987) ("the absence of specific findings does not render the decree void"). As the majority seems to agree, "[t]he issue then is whether the evidence supports an award of spousal maintenance in view of the statutory prerequisites." Wineinger , 137 Ariz. at 197, 669 P.2d 971 (internal citations omitted).[9] Consequently, so long as the record before the trial court was sufficient to support its determination that Cotter was not eligible for spousal maintenance, the trial court's decision should be upheld without remand for express findings.
¶ 34 Cotter received her share of marital property, she had an income from a private disability insurance policy and received Social Security disability benefits, and there was no evidence that she could not work at least part time for wages. Because Cotter has an income, and because she did not present any evidence that she is presently unable to work to earn additional income, and because, together, these would serve to meet the reasonable needs she identified, the record supports the trial court's determination that she is ineligible for spousal maintenance.[10] See, e.g. , Neal , 116 Ariz. at 592, 570 P.2d 758.
¶ 35 Because the majority, at best, confuses what is needed by § 25-319, I cannot fully join in its opinion, and, because the record supports the trial court's finding of ineligibility, I would affirm the decree in its entirety.

The majority also mistakenly states that a requesting party could be self-sufficient through appropriate employment, yet still be eligible for maintenance if he does not have property sufficient to provide for his reasonable needs. That cannot be true because, regardless of the source of the means by which one's reasonable needs are met, if they are being met, one is ineligible for maintenance under either § 25-319(A)(1) or (2). The majority claims this dissent "conflates" these concepts; the majority however simply overlooks the practical import of the concepts altogether.

Even while conceding this point, the majority faults the court for not making specific findings about the value of Cotter's property, the cost of her reasonable needs, or the "term for which that property could be expected to provide for those needs before she exhausted it."

The record also supports a finding of ineligibility under all other grounds under § 25-319.