NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

IBRAHIM MOHAMED OSMAN, *Petitioner/Appellant*,

*v.*

RASHA HASSOUN, *Respondent/Appellee*.

No. 1 CA-CV 22-0245 FC
FILED 1-24-2023

Appeal from the Superior Court in Yuma County
No. S1400DO201901005
The Honorable Mark W. Reeves, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Schneider & Onofry, PC, Yuma
By Jon D. Schneider, Dee R. Giles
*Counsel for Petitioner/Appellant*

Mary Katherine Boyte, PC, Yuma
By Mary K. Boyte Henderson
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Acting Presiding Judge James B. Morse Jr. and Chief Judge Kent E. Cattani joined.

---

**B R O W N**, Judge:

¶1 Ibrahim Mohamed Osman ("Father") appeals the superior court's decree dissolving his marriage to Rasha Hassoun ("Mother") and the denial of his motion to alter or amend ("Motion To Amend") the decree. For reasons that follow, we vacate the court's spousal maintenance award and remand for reconsideration of the award. We also remand for reconsideration of Father's request for reimbursement of post-petition community expenses. We affirm the rest of the decree.

## BACKGROUND

¶2 Father and Mother married in 1998 and have three sons. The youngest son was born in 2006. The middle son was born in 2003 and is cognitively challenged; Mother has been appointed his guardian. The oldest child, born in 2001, attends college. Father is a civil engineer and is self-employed as the owner of Osman Engineering, PLLC. Mother has been out of the workforce since 2011 and is the primary caregiver for the parties' sons.

¶3 In 2019, Father petitioned the court for dissolution, which led to the superior court's issuance of temporary orders granting Mother sole legal decision-making authority but advising her to keep Father informed of medical, educational, and religious issues involving the children. The court ordered Father to "have consistent, meaningful parenting time with the children each Friday from 6:00 p.m. to 9:00 p.m.," but otherwise they were to reside with Mother. The court also ordered Father to pay child support, spousal maintenance, and various household expenses.

¶4 Following an August 2021 trial, the superior court entered its decree of dissolution that (1) awarded Mother sole legal decision-making authority over the youngest son; (2) awarded her spousal maintenance of $5,000 per month for 10 years; (3) ordered Father to pay $1,688.00 per month in child support for the two younger sons; (4) assigned two Small Business Administration ("SBA") loans to Father as business debts; (5) ordered that

the parties' 2018 Buick be allocated to Mother to be held in trust for Y.O., the oldest son; (6) allocated the parties' bank accounts, assets, and outstanding debts, and (7) awarded Mother $17,500 in attorneys' fees. Father then filed his Motion To Amend. After further briefing, the court issued additional findings addressing legal decision-making but denied the remaining issues he had raised. Father timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.      Legal Decision-Making

**¶5**            Father argues the superior court abused its discretion in failing to order joint legal decision-making and thus deprived him of his fundamental right to parent. We review determinations of legal decision-making for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). We view the evidence in the light most favorable to upholding the court's decision and we will affirm unless the record lacks competent evidence. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009).

**¶6**            When legal decision-making is contested, the court must consider the child's best interests under the factors set forth in A.R.S. § 25-403(A) and make findings on those factors. *DeLuna*, 247 Ariz. at 423, ¶¶ 9, 11. Absent evidence to the contrary, it is in a child's best interests to have both parents participate in decision-making. A.R.S. § 25-103(B)(2).

**¶7**            Here, the court made § 25-403(A) findings, based on the evidence presented at the temporary orders hearing and at trial, and concluded that sole legal decision-making is in the youngest son's best interests. Father has not challenged any of those findings. Instead, he contends the "court did not hear any evidence about this [issue] other than [Mother's] self-serving statements as to the children's needs and desires." But Father does not suggest he was precluded from presenting his own evidence, and he cites no authority suggesting that Mother's testimony, even if self-serving, could not be relied on in determining legal decision-making. Thus, Father has not established that the court "simply adopted [Mother]'s proposed Findings" without evidentiary support.

**¶8**            Moreover, the court's decision to award sole legal decision-making to Mother must be considered in context. Mother filed a pretrial statement requesting continuation of sole legal decision-making and submitted a corresponding parenting plan. Father did not file a pretrial statement or a parenting plan. At trial, his counsel requested joint legal decision-making, with Mother having final say so he could "stay in the

loop," but "ultimately speaking, the decisions . . . would fall on the mother." Father spent very little time addressing decision-making and testified generally that he thought she would keep him in the loop if he were to ask her to do so.

¶9        Finally, Father's suggestion that the court erred under A.R.S. § 25-411(J) because there was no evidence he "would endanger seriously the children's physical, mental, moral or emotional health" is unavailing. That statute relates only to parenting time, which he has not challenged. The court acted within its discretion in awarding Mother sole legal decision-making.

## II.        Spousal Maintenance

¶10        The superior court has substantial discretion in setting the amount and duration of spousal maintenance. *Rainwater v. Rainwater*, 177 Ariz. 500, 502 (App. 1993). A court must weigh the factors listed under A.R.S. § 25-319(B). *Id.* Because spousal maintenance requires a "case-by-case inquiry," a court need not apply every factor listed, but only those that are relevant and applicable to the facts of the case before it. *See id.* On appeal, we do not reweigh the evidence. *Hurd*, 223 Ariz. at 52, ¶ 16.

¶11        Father argues, without citation to authority, that the court was "required to make findings on all factors" relevant to the case. Section 25-319, however, does not require any specific findings, *Wineinger v. Wineinger*, 137 Ariz. 194, 197 (App. 1983), and neither party requested findings under Arizona Rule of Family Law Procedure 82. Thus, we may infer from the court's ruling all findings necessary to sustain it if they are reasonably supported by the evidence and do not conflict with any express findings. *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984).

¶12        Applying A.R.S. § 25-319(A), the court found Mother was eligible for spousal maintenance because she lacks sufficient property, including assets awarded under the decree, to provide for her reasonable needs. The court also found Mother had made significant contributions to Father's career and earning ability, and she had forgone career opportunities for his benefit. The court then explained it had considered the § 25-319(B) factors as to amount and duration of the award. While findings on those factors would have been helpful, particularly in this case, their absence does not mean the court erred. *See Higgins v. Higgins*, 154 Ariz. 87, 88 (App. 1987).

¶13        Father asserts the award is unreasonable, pointing to several of the § 25-319(B) factors. He contends that no testimony was offered about

the marital standard of living, but the record shows otherwise.  In her pretrial statement, Mother asserted that the parties enjoyed an "upper-middle class standard of living," which included ownership of a large home and a rental property, multiple vehicles, and the ability to enjoy household goods "without serious considerations of costs."  The trial evidence reflects that standard.  For example, the parties each testified to spending over $50,000 to construct a pool at the marital home.  They also purchased a residential rental property and bought a new car for the oldest son as a gift.

¶14        Father contends the $5,000 award, together with the child support order, requires him to contribute over 85 percent of his monthly salary to Mother.  During the divorce proceeding, many issues arose relating to Father's annual income and the valuation of his business.  A business evaluation was ordered, in part, because Father admitted to mixing business and personal expenses and to using a single, undisclosed excel spreadsheet to calculate his tax returns.  Unlike Mother, he did not provide an updated affidavit of financial information ("AFI") before trial.  In any event, the court received other evidence about Father's annual income and the value of his engineering business.  And he has not challenged the monthly income amount of $17,500 attributed to him in the child support worksheet.  The court acted within its discretion in implicitly concluding that Father has the ability to pay the award.

¶15        Father argues that Mother's estimation of her monthly expenses ($12,614.90) lacked any evidentiary support, or at a minimum was based on "faulty assumptions."  He first claims that Mother's AFI includes extravagant spending, but we will not reweigh the evidence on that point.  *See Hurd*, 223 Ariz. at 52, ¶ 16.  He also argues that Mother improperly included a mortgage payment of $3,314.62 and a car payment of $459.28 in her AFI because the court ultimately ordered him to make those payments.  Father raised this argument in his Motion To Amend, but the superior court did not address it.

¶16        Mother does not dispute that those two recurring payments should not have been included in her AFI.  Instead, she defends the spousal maintenance award in part because it was lower than what she requested and her listed monthly expenses were "$1,428.24" less than Father's estimated expenses.  Because the record does not reflect that the court properly accounted for Mother's erroneous inclusion of the mortgage and car expenses in her AFI, we vacate the award and remand for reconsideration of the spousal maintenance award without those expenses.

### III.    Allocation of Assets and Debts

¶17        Father contends the superior court erred as a matter of law when it failed to treat the Buick car as a community asset. He also argues the court abused its discretion by treating the two SBA loans as business debts, improperly allocating other debts, and denying his request for reimbursement for community expenses he paid for after filing for dissolution.

¶18        When apportioning community property and debts, the superior court has broad discretion to achieve an equitable result. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007). All marital joint property should generally be divided substantially equally unless sound reasons exist to divide the property otherwise. *Toth v. Toth*, 190 Ariz. 218, 221 (1997). Thus, while in most cases, dividing jointly held property equally will most often be equitable, the court retains broad discretion in the division and allocation of specific assets and liabilities. *In re Marriage of Flower*, 223 Ariz. 531, 535, ¶¶ 13–14 (App. 2010). We view the evidence in the light most favorable to upholding the court's order. *Boncoskey*, 216 Ariz. at 451, ¶ 13.

### A.    2018 Buick

¶19        Father argues the court improperly awarded the 2018 Buick to Mother "without considering its value in the equitable distribution of community assets." The parties agreed the Buick was purchased as a gift for Y.O., and that Y.O. used the car until leaving to attend college in New York. Mother began using it instead of her 2008 Mercedes, which often needed repairs. Mother asked the court to allow continued use until the Buick is paid off and title transferred to Y.O., or in the alternative, that the court increase spousal maintenance to facilitate obtaining a reliable vehicle. Father claimed his 2013 Ford Focus was unreliable, and he also sought use of the Buick. Ultimately, the court ordered Father to pay the remaining balance owed on the Buick loan, while awarding the vehicle as property to Mother to hold in trust for Y.O.

¶20        Father fails to support his claim that the Buick was not treated as a community asset. The court did not state that the Buick was the separate property of either spouse, and Father cites no authority suggesting the court could not allocate the asset (which the parties agreed will ultimately be given to Y.O.) in the manner it did as an equitable solution. The court's ruling is supported by Mother's testimony, who explained that she needed a reliable vehicle to transport herself and her two younger sons.

¶21  Father contends the court erred by failing to consider any evidence on the Buick's value. But from the outset of the case, Father failed to timely disclose many records, including information relating to the outstanding lien on the car. At trial he tried to offer a value based on an unnamed internet source that was not disclosed before trial, but the court acted within its discretion in sustaining Mother's evidentiary objection. In any event, she only received the value of being able to use the vehicle for a relatively brief time period. Father has not shown the court erred in ordering that Mother be awarded use of the Buick, while holding it in trust for Y.O.

### B.  Allocation of Debts

#### 1.  SBA Loans

¶22  Father argues the superior court erred in allocating responsibility for several debts. He first challenges the court's decision to classify the two SBA Loans as debts of Osman Engineering, asserting the "only evidence" in the record shows the loans were used to pay for community obligations. The record shows otherwise. After Father learned he should no longer handle all of his business and personal expenses from the same account, he filed an amended 2019 tax return. According to Mother, the amended return included SBA Loan interest as a business expense, which Father does not dispute. And though Father testified he used the loans to make purchases for the marital community, such as Mother's Mercedes and the construction of their swimming pool, he also said he and Mother each took out individual lines of credit to finance the pool. Mother similarly testified that they each opened a line of credit with BBVA Compass to pay for the pool, and she believed the Mercedes was financed with a loan from the AEA Credit Union.

¶23  Moreover, we reject Father's assertion that a "business valuation" report prepared before trial proves that the SBA loans were community debts because they were not listed in the report. The report is labeled a "Calculation of Value" and states that it "does not include all of the procedures required in a valuation engagement[.]" The report also clarified that it "did not comprise an examination in accordance with generally accepted auditing standards." At trial, both parties presented testimony and arguments on whether the report accounted for the SBA loans. And because the evaluator was not called to testify, the court cautioned the parties about attempting to determine the methodology the evaluator used in preparing the report. At best, Father showed there were

disputed facts as to how the loans should be treated, and therefore the court acted within its discretion in resolving the dispute in favor of Mother.

## 2.     Mortgage Payments and Credit Cards

¶24         Father contends the allocation and division of several community debts led to an unequal division of property in favor of Mother. He seeks reimbursement for mortgage payments made on behalf of the marital community to Mother as well as Ford, Best Buy, and Dillard's credit cards, each with outstanding debts that "were undisputedly incurred during the marriage."

¶25         In asserting he paid "more than $54,000" toward the mortgage on the home awarded to Mother, Father fails to acknowledge that such payments were made under the court's temporary orders. Had he not been ordered to remain current on the mortgage, the court presumably would have awarded Mother additional temporary spousal maintenance so she could make the payments.

¶26         As to the credit cards, the decree did not specifically assign them to either party. Instead, they were allocated by the general assignment provision directing that each party, respectively, pay "all debts and obligations not otherwise listed herein which were incurred by [Father/Mother] without [Father/Mother]'s express consent and co-signature." Father argues the court abused its discretion because there was "no evidence to establish which party incurred" the respective debts. However, as the court explained in its order denying the Motion To Amend, equity justified excluding debts incurred by Father from equalization because Father can repay them and it would be inequitable to impose that obligation on Mother. The court also relied on Father's "lack of proper disclosure regarding these debts."

¶27         The only documents Father offered on the Ford credit card balance were two pages of online account statements, dated December 2019 and October 2020. At trial, Father testified he continued to make payments on the account since filing for dissolution. Mother testified she was unaware of the Ford credit card and had "no idea" what it was used for. Her testimony aligns with her joint property schedule, where she attributed the account balance to Father because the credit card was linked to the business.

¶28         Similarly, the only documents Father provided for the Dillard's credit card were two single-page account summaries for October 2019 and February 2021. And as to the Best Buy credit card, no evidence

was presented by either party on the remaining balance or who controlled the card. Father's only testimony, as with the others, was his blanket assertion that he had continued to make the necessary monthly payments. Had Father provided accurate disclosure of information relating to these credit cards, the court could have better determined what debts were incurred and by whom. Without that information, we cannot say the court abused its broad discretion in equitably allocating the parties' debts.

### 3. Voluntary Payments

**¶29** Finally, Father argues the court abused its discretion in failing "to reimburse him or take into consideration" voluntary payments he made per month ($2,587.94) toward community obligations that were in addition to his payments made under the temporary orders. Post-petition expenditures toward community debt paid by one spouse with separate property are not presumptively gifts to the community, and the paying spouse is generally entitled to reimbursement. *Bobrow v. Bobrow*, 241 Ariz. 592, 596–97, ¶¶ 1920 (App. 2017). A spouse who disputes the request for reimbursement has the burden to prove by clear and convincing evidence that such payments were intended to be a gift. *Id*. at 595, ¶ 10. If that burden is not met, the court must account for the payments but may do so in various ways to achieve an equitable property division. *Huey v. Huey*, 253 Ariz. 560, 567, ¶ 18 (App. 2022); *Berg v. Berg*, No. 1 CA-CV 21-0320 FC, 2022 WL 1498136, at * 4, ¶ 20 (Ariz. App. May 12, 2022) (mem. decision). Because nothing in the record shows the court accounted for Father's post-petition voluntary payments for community debts, on remand the court must consider such payments in the context of achieving an overall equitable division of property.

### CONCLUSION

**¶30** We vacate the superior court's award of spousal maintenance to Mother and remand for reconsideration of the award. The court shall also account for Father's post-petition voluntary payments toward community obligations. In all other respects, we affirm. After considering

9

the financial resources and the reasonableness of the parties' positions, in our discretion we deny Mother's request for attorneys' fees incurred on appeal under A.R.S. § 25-324. We decline to award taxable costs to either party.



AMY M. WOOD • Clerk of the Court
FILED:    AA