IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

FRANCINE C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.C., *Appellee*.

No. 1 CA-JV 19-0366
FILED 6-23-2020

---

Appeal from the Superior Court in Maricopa County
No. JD531916
The Honorable Kristin Culbertson, Judge

**VACATED AND REMANDED WITH INSTRUCTIONS**

---

COUNSEL

Maricopa County Legal Defender, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Tom Jose
*Counsel for Appellee*

---

**OPINION**

---

Presiding Judge Paul J. McMurdie delivered the opinion of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1        Francine C. ("Mother") appeals the juvenile court's order adjudicating her daughter, Kourtney, dependent based on Mother's alleged failure to protect Kourtney from exposure to substance abuse and domestic violence while the child was in her father's care. Because the juvenile court erred by failing to state the basis for the dependency as required by Arizona Revised Statutes ("A.R.S.") section 8-844(C)(1)(a)(ii) and Arizona Rule of Procedure for the Juvenile Court ("Juvenile Rule") 55(E)(3), we vacate and remand the dependency order. In so doing, we hold: (1) a parent does not waive the requirement of specific findings by not raising the issue before the juvenile court; (2) a dependency order and the surrounding circumstances must be sufficiently specific to allow for effective appellate review; and (3) in this case, absent specific findings by the juvenile court, we are unable to determine if the dependency order is supported by reasonable evidence.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Mother and Walter C. ("Father") divorced after Mother moved with Kourtney from Arizona to Arkansas in 2011 when the child was one year old. An Arkansas court awarded Mother and Father joint custody, with Father having reasonable and seasonal parenting time. By 2018, Kourtney and Father had communicated only by phone and had not seen each other since Mother took Kourtney to Arkansas. Kourtney wanted to develop a relationship with her father, so in June 2018, Mother agreed to send her to Arizona to stay with Father for the summer. By the end of the summer, Mother and Father decided that Kourtney could remain with Father for the following school year.

¶3        Shortly before Kourtney arrived in Arizona, Father's girlfriend gave birth to their son, who was born substance-exposed. The Department of Child Safety ("DCS") took custody of the newborn in May 2018. In connection with that investigation, Father tested positive for

methamphetamine, cocaine, benzoylecgonine, and norcocaine on May 30, 2018. After receiving a report a few weeks later that Father had brought Kourtney to a hearing in the dependency matter for his son, a DCS investigator called Mother on August 7, 2018, and advised her of Father's substance use. Mother said she knew Father had a history of substance abuse but explained that she believed Father was sober because she assumed he was being tested for drugs since he was on parole and employed. Mother told the investigator that Father had recently discussed the DCS case about his son with her, but she understood that it was Father's girlfriend who was using drugs, not Father. Mother stated that she had conditioned Kourtney's stay in Arizona on Father being drug-free. She told the investigator she would "start making arrangements for an immediate flight back to Arkansas for Kourtney." DCS did not take further action, and Kourtney remained with Father.

¶4            Two weeks later, the police notified DCS that they had arrested Father because he and his girlfriend were involved in a domestic-violence altercation that Kourtney had witnessed. Because there was no caregiver available, DCS took Kourtney into custody and placed her with Father's sister ("Aunt"). The investigator again spoke with Mother, who asserted she had been waiting on a tax-refund check to buy a plane ticket for her daughter, but that the check had just arrived. Mother later notified DCS that she and Aunt had agreed it would be better for Kourtney to remain with Aunt for the remainder of the school year before returning to Arkansas.

¶5            In August 2018, DCS petitioned the juvenile court to find Kourtney dependent, alleging:

> Mother is unable to parent due to neglect and a failure to protect. Mother failed to take appropriate action to protect the child from the domestic violence and substance abuse that occurred in Father's home. In June 2018, Mother sent the child to Arizona to live with Father for about a year. Mother has a history of failing to protect her children. Mother left her children in the care of a registered sex offender.

The court held a joint-dependency adjudication for Mother and Father in October 2019.[1] Before the start of the trial, DCS withdrew several allegations related to Father, including "Father has a history of domestic violence" and "Father does not have a medical marijuana card." After removing these allegations, Father agreed not to contest the claims remaining in the petition. The court adjudicated Kourtney dependent regarding Father and then proceeded to Mother's case.

¶6        Mother informed the court that she and DCS had reached an agreement for a pre-adjudication guardianship with Aunt. Father had been the holdout to the agreement, but now that Kourtney had been adjudicated dependent regarding Father, Mother requested to proceed with that arrangement. But DCS stated it was concerned that Aunt "doesn't fully understand what . . . guardianship means," and "without having the time to do a—a permanency [meeting] and really sit down with [Aunt], . . . we're just not comfortable agreeing to that, and we—we do have everybody here."

¶7        The court noted that it had been over a year since Kourtney had been removed from Father's home and proceeded with the hearing. The only evidence presented was a court report dated August 28, 2018, testimony from the case manager who took over the case in March 2019, and a DCS investigator.

¶8        The investigator testified that DCS had "concerns for [Mother's] judgment" because she had sent Kourtney to Arizona to stay with her Father "knowing his history of substance abuse and his criminal history." Based on the investigator's limited investigation into Mother's background, however, she was unable to say whether Mother was minimally adequate to parent.

¶9        The case manager testified that DCS had safety concerns regarding Mother's home and could not return Kourtney to Mother until it satisfied its "statutory obligation to assess" the home. The case manager explained that when DCS has a concern about a parent's home in another state, it usually initiates the Interstate Compact for the Placement of Children ("ICPC") process, which here would mean "running background checks on the individual[s] that [Mother] identif[ies]." The case manager

---

[1]        The Arkansas court consented to Arizona's jurisdiction to hear the dependency action under the Uniform Child Custody Jurisdiction and Enforcement Act. *See* A.R.S. §§ 25-1037, -1038.

testified, however, that, although it would be Arkansas that assessed Mother's home, she had not contacted Arkansas's Division of Child and Family Services to do so even though she knew Arkansas would not commence an investigation until Arizona initiated an ICPC.[2]

¶10        After the close of evidence, the court stated: "Based on the evidence that was presented, the Department met their legal standard for a dependency finding against Mother." The corresponding minute entry read:

> THE COURT FINDS, pursuant to the Rules of Procedure for the Juvenile Court, that the allegations of the petition are true by a preponderance of the evidence and the child is dependent as to [Mother] as defined by the Arizona Revised Statutes.

Mother appealed, and we have jurisdiction under A.R.S. § 8-235(A) and Juvenile Rule 103(A).

---

[2]        The ICPC facilitates cooperation between states in the placement and monitoring of dependent children. *See* A.R.S. § 8-548. In *Donald W. v. DCS*, we held that an "ICPC is *not required* when evidence does not support a dependency as to the out-of-state parent." 247 Ariz. 9, 20, ¶ 38 (App. 2019) (emphasis added). Put differently, without reasonable evidence of facts warranting a dependency, DCS may not wait for an ICPC investigation to conclude before it returns a child to the parent. *Id.* at 21, ¶ 41. Consistent with this holding, other states have concluded more broadly that the ICPC does not apply to placement with a parent, holding that the ICPC regulations for placing a child with a parent "are invalid because they impermissibly expand the scope of [the ICPC]" beyond the scope given by the legislature. *In re Emoni W.*, 48 A.3d 1, 10 (Conn. 2012); *In re R.S.*, 215 A.3d 392, 400, n.15 (Md. Ct. Spec. App.) ("Lest there be any confusion, our reading of the plain language of the ICPC, ['placement in foster care or as preliminary to a possible adoption,'] shows that it does not apply to parental placements regardless of whether allegations of abuse or neglect have been sustained as to the out-of-state parent . . . ."), *cert. granted*, 221 A.3d 988 (Md. 2019); *see also ICPC Regulations*, American Public Human Services                                             Association, https://aphsa.org/OE/AAICPC/ICPC_Regulations.aspx (last visited June 18, 2020).

## DISCUSSION

**¶11** On appeal, Mother argues the juvenile court erred by failing to make sufficiently specific findings as required by A.R.S. § 8-844(C)(1)(a)(ii) and Juvenile Rule 55(E)(3) and by adjudicating Kourtney dependent without reasonable evidence to support a dependency. DCS responds: (1) Mother waived the opportunity for more specific findings by failing to raise the issue in the juvenile court; (2) the order is sufficiently specific to allow for effective appellate review; and (3) reasonable evidence allows this court to infer findings to support the order.

**A.     An Appellate Court Cannot Affirm a Dependency Order that Lacks Findings that Are Sufficiently Specific to Permit Effective Appellate Review.**

**¶12** Before the State may interfere with a parent's right to parent his or her child, it must prove the child is dependent under A.R.S. § 8-201(15)(a). Our legislature and supreme court have established significant procedural safeguards to protect the fundamental right at stake in juvenile proceedings. *See* A.R.S. § 8-844(C)(1)(a)(ii); Juvenile Rule 55(E)(3); *Crosby-Garbotz v. Fell*, 246 Ariz. 54, 58, ¶ 17 (2019) ("[D]ependency proceedings affect liberty interests as well—the fundamental right of parents regarding their children's upbringing . . . ."); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). As relevant here, when the juvenile court finds that a petitioner has proven the allegations in a dependency petition by a preponderance of the evidence, it must "[s]et forth specific findings of fact in support of a finding of dependency," which "shall be in the form of a signed order or contained in a minute entry." Juvenile Rule 55(E)(3); A.R.S. § 8-844(C)(1)(a)(ii) (juvenile court must provide "[t]he factual basis for the dependency"); *cf. Ruben M. v. ADES*, 230 Ariz. 236, 240, ¶ 22 (App. 2012) (in termination proceedings governed by Juvenile Rule 66, "the court must specify at least one factual finding sufficient to support each of th[e] conclusions of law"). These requirements are not discretionary; they are mandatory in every dependency proceeding.

**¶13** As noted in the context of termination proceedings, "[t]he primary purpose for requiring a court to make express findings of fact and conclusions of law is to allow the appellate court to determine exactly which issues were decided and whether the lower court correctly applied the law." *Ruben M.*, 230 Ariz. at 240, ¶ 24. And, again in the termination context, "findings also serve other important purposes, including prompt[ing] judges to consider issues more carefully because they are required to state

not only the end result of their inquiry, but the process by which they reached it." *Logan B. v. DCS*, 244 Ariz. 532, 538, ¶ 18 (App. 2018) (alteration in original) (quotation marks omitted) (quoting *Miller v. Bd. of Supervisors*, 175 Ariz. 296, 299 (1993)). "It must be clear [from the findings] how the court actually did arrive at its conclusions." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996) (alteration in original) (quoting *Elliott v. Elliott*, 165 Ariz. 128, 135 (App. 1990)).

¶14        Although the juvenile court does not have to detail *each* fact that supports its ruling, *Christy C. v. ADES*, 214 Ariz. 445, 451-52, ¶ 19 (App. 2007), its findings must include all of the "ultimate facts," *Ruben M.*, 230 Ariz. at 241, ¶ 25. "[U]ltimate facts are *at least* the essential and determinative facts on which the conclusion was reached. They are the controlling facts, without which the court cannot correctly apply the law in resolving the disputed issues in the case." *Logan B.*, 244 Ariz. at 537, ¶ 15 (alteration in original) (quotation marks omitted) (quoting *Miller*, 175 Ariz. at 300); *Ruben M.*, 230 Ariz. at 241, ¶ 25 ("Findings must include 'all of the "ultimate" facts—that is, those necessary to resolve the disputed issues.'" (quoting *Elliott*, 165 Ariz. at 132)). We review the sufficiency of findings of fact *de novo* as a mixed question of fact and law. *Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 128, ¶ 13 (App. 2012).

### 1. A Party Cannot Waive the Juvenile Court's Failure to Include Findings of Fact in a Dependency Order.

¶15        There are several ways a court might be obligated to make specific findings of fact and conclusions of law. First, a rule or statute may allow a party to request that the court do so. *See, e.g.*, Ariz. R. Civ. P. 52(a)(1) ("[I]f requested before trial, the court must find the facts specially and state its conclusions of law separately."). And it has long been the rule that if a party fails to make such a request, then the court is not obligated to make findings, and the appellate courts deem the failure to ask for them as a waiver of the right to have the findings made. *Lenslite Co. v. Zocher*, 95 Ariz. 208, 216 (1964); *Elliott*, 165 Ariz. at 134; *Myers-Leiber Sign Co. v. Weirich*, 2 Ariz. App. 534, 537 (1966). Also, courts have consistently held that when a party has invoked a permissive rule, and the court fails to make the requisite findings, the court's failure to make the findings is nonetheless waived if the court's error is not brought to its attention in a post-judgment motion. *Trantor v. Fredrikson*, 179 Ariz. 299, 301 (1994); *Elliott*, 165 Ariz. at 134.

¶16        By contrast, in other situations, a statute or a rule may require a court to make findings even absent the request of a party. *See, e.g.*, A.R.S.

§ 8-844(C)(1)(a)(ii); Juvenile Rule 55(E)(3); Ariz. R. Civ. P. 52(a)(2) (injunction proceedings). A party litigating a matter involving mandatory findings does not have to ask before the judgment to require that the court make findings. *See Trantor*, 179 Ariz. at 301.

¶17 When a court fails to comply with a *rule* that mandates findings, a party who does not raise the issue in an authorized post-judgment motion may waive it on appeal. *Bayless Inv. & Trading Co. v. Bekins Moving & Storage Co.*, 26 Ariz. App. 265, 271 (1976) (when a litigant fails to file an authorized post-judgment motion bringing "the trial court's attention to the claimed lack of [a specific] finding[]" under Arizona Rule of Civil Procedure ("Civil Rule") 52(a)(2), the issue is waived on appeal); *see also Trantor*, 179 Ariz. at 301 ("Although this issue is not before us, and therefore we do not decide it, we think that if findings are waivable even where Rule 52(a)[(2)] specifically requires them, they are waivable where awards are made under statutes that do not specifically require them.").

¶18 Our supreme court has taken a different view, however, regarding waiver when mandatory findings are imposed by statute. In *Aguirre v. Industrial Commission*, the court noted that under A.R.S. § 41-1063, the judicial officer was required to make findings of fact and conclusions of law and that each finding must contain facts supporting the findings. 247 Ariz. 75, 77, ¶ 12 (2019); *see also Post v. Indus. Comm'n*, 160 Ariz. 4, 7 (1989). The court explicitly rejected the argument that the appellant had waived the issue by not raising it in a post-ruling motion. *Aguirre*, 247 Ariz. at 77–78, ¶¶ 14–15.

> Thus, because [the judicial officer] failed to fulfill his statutory duty, we cannot, as a practical matter, review his decision on appeal. As a result, the award is legally deficient and must be set aside regardless of whether the claimant has raised the issue.

*Id.* at 78, ¶ 15 (citation omitted); *Post*, 160 Ariz. at 8 ("If we were to approve the award here, however, with no stated resolution of conflicting testimony, no findings of ultimate fact, and no conclusions on the legal issues, there would be no purpose in requiring judges to make findings."). The same principle applies to parenting-time and decision-making orders under A.R.S. § 25-403, which mandates specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child. A.R.S. § 25-403(B); *Reid v. Reid*, 222 Ariz. 204, 210, ¶ 20 (App. 2009) ("The lack of findings in this case was error as a matter of law, which deprived this court of a meaningful opportunity to assess the family court's

best interests finding, and Father did not waive this issue in this limited circumstance by failing to raise it below." (citation omitted)).

¶19 Whether a party has waived the right to findings is not a matter of semantics, but substantively affects how an appellate court reviews a case. Generally, an appellate court may infer that the superior court has made whatever additional findings are necessary to sustain its judgment. *Elliott*, 165 Ariz. at 135; *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984). This principle applies if the additional findings are reasonably supported by the evidence and do not conflict with any of the court's express findings. *Thomas*, 142 Ariz. at 390. However, the general principle does not apply if the court failed in its obligation to make findings of fact, and the issue is preserved for appeal. *See Silva v. DeMund,* 81 Ariz. 47, 50 (1956). We have explained the difference in how we review cases when the general rule does not apply.

> Where the basis on which the court reached a certain conclusion is not clear, it is not enough that the appellate court is able to derive bases on which the trial court could have permissibly reached the decision it did from the record. It must be clear how the court actually did arrive at its conclusions. Otherwise, there is no assurance that the court itself thought out each issue, and an appellate court cannot effectively review the decision-making process of the trial court.

*Elliott*, 165 Ariz. at 135 (quoting *Urban Dev. Co. v. Dekreon,* 526 P.2d 325, 328 (Alaska 1974)); *accord Aguirre*, 247 Ariz. at 78, ¶ 15; *Post*, 160 Ariz. at 8.

¶20 As noted above, the juvenile court's minute entry said nothing more than that the allegations in the dependency petition were "true by a preponderance of the evidence." Mother argues the juvenile court committed reversible error by failing to make any specific findings of fact in support of its order. DCS responds that the order contains sufficient findings and that Mother waived her right to more specific findings because she "could have raised this issue in a motion to clarify, reconsider, or set aside after the juvenile court entered the minute entry adjudicating Kourtney dependent." We disagree with DCS.

¶21 The general waiver rule DCS asserts does not apply in a dependency action. The right to specific findings and conclusions is a statutory right under A.R.S. § 8-844(C)(1)(a)(ii) that is not waived by failing to assert it in a post-proceeding motion. *Cf. Aguirre*, 247 Ariz. at 78, ¶ 15.

Such a statutory right is particularly critical here "[b]ecause dependency proceedings implicate the 'important and fundamental right to raise one's children.'" *Jessicah C. v. DCS*, 248 Ariz. 203, 207, ¶ 15 (App. 2020) (quoting *Brionna J. v. DCS*, 247 Ariz. 346, 349, ¶ 8 (App. 2019)).

**¶22**　　　　Consistent with the no-waiver principle, the Juvenile Rules applicable to a dependency do not authorize a party to challenge a dependency order by filing a motion for reconsideration or clarification. The Juvenile Rules "govern the procedure for all matters in the juvenile court," Juvenile Rule 1(A), but several of the Civil Rules are incorporated by reference. There is no explicit juvenile rule authorizing a motion for reconsideration or clarification of a dependency or termination order. *But see* Juvenile Rule 77(C) (applicable only in adoption proceedings) (an "applicant who is determined to be unacceptable to adopt may file a motion [for reconsideration]"); *see also* Juvenile Rule 107(A) (governing petitions for review of juvenile matters) ("No motion for reconsideration in the court of appeals shall be permitted."). While a court may have the "inherent authority" to reconsider an order, *State v. Fendler*, 127 Ariz. 458, 460 (App. 1980), the juvenile court is not obligated to entertain such a motion.

**¶23**　　　　DCS incorrectly asserts that Mother should have raised the issue by moving to set aside the judgment. *See* Juvenile Rule 46(E). A motion to set aside the judgment "does not encompass situations . . . where a party merely asks the court to reconsider a previous legal ruling." *Hyman v. Arden-Mayfair, Inc.*, 150 Ariz. 444, 446 (App. 1986) (interpreting Civil Rule 60(b), then Civil Rule 60(c)); *see also* Juvenile Rule 46(E) (a motion under this rule "shall conform to the requirements of [Civil] Rule 60(b)–(d)"). Notably, Juvenile Rule 46(E) does not incorporate Civil Rule 60(a), titled "Corrections Based on Clerical Mistakes; Oversights and Omissions." Moreover, Civil Rule 60(b) is not a substitute for a motion to alter or amend a judgment under Civil Rule 59. Instead, it "is primarily intended to allow relief from judgments that, although perhaps legally faultless, are unjust because of extraordinary circumstances that cannot be remedied by legal review." *Hyman*, 150 Ariz. at 446, 447 (quoting *Tippit v. Lahr*, 132 Ariz. 406, 408–09 (App. 1982)).

**¶24**　　　　The juvenile rules do not require a parent to take affirmative action to ensure that the juvenile court follows the law before he or she is entitled to an effective appellate review. *See Bayless*, 26 Ariz. App. at 270–71 (the failure to object to lack of a finding "does not deprive appellants of the right to question on appeal the sufficiency of the evidence to support the judgment entered"). And under the juvenile rules, "an appellant has 15 days to file a notice of appeal after entry of the juvenile court's final order,

and the rules do not provide for any time-extending motions that extend the time to file a notice of appeal." *Logan B.*, 244 Ariz. at 537, ¶ 11, n.5 (citation omitted). A party contemplating challenging a dependency order does not have to choose between filing a motion for clarification that the court *may* entertain or an appeal.

**¶25** A party cannot waive a requirement that our legislature has imposed upon the juvenile court for the primary purpose of aiding an appellate review. *See Aguirre*, 247 Ariz. at 78, ¶ 15; *Reid*, 222 Ariz. at 209, ¶¶ 18–19.[3]

### 2. The Order Lacks Sufficiently Specific Findings to Enable this Court to Provide a Meaningful Review.

**¶26** Waiver being inapplicable, we turn to DCS's contention that the court impliedly adopted all the allegations in the petition as its findings and that reasonable evidence supports those findings. But this contention highlights why the juvenile court is required to provide findings containing the ultimate facts supporting its conclusion. If the court did intend to adopt DCS's factual allegations as its findings, it erred because several of those allegations are not supported by the evidence and are insufficient as a matter of law.

**¶27** When a court fails to make or makes insufficient findings of fact and conclusions of law, a reviewing court "must tailor the proper remedy [for] each case." *Miller*, 175 Ariz. at 300; *Miller v. McAlister*, 151 Ariz. 435, 437 (App. 1986). This generally means the appellate court will remand for further findings, but it "may also decide an appeal without those findings if it is in a position to do so." *Miller*, 175 Ariz. at 300. For example, in the rare case that does not turn on contested facts, if we can fully understand the issues raised without findings, we may affirm without findings. *Id.* (citing *Davis v. United States*, 422 F.2d 1139, 1142 (5th Cir. 1970)).

---

[3] Although a parent cannot waive the juvenile court's obligation to make the required findings, nothing prevents a party from asking this court to "suspend the appeal and revest jurisdiction in the juvenile court for the limited purpose of allowing the court to make the required written findings." *Logan B.*, 244 Ariz. at 537, ¶ 11, n.5; *Selena T. v. DCS*, 1 CA-JV 17-0527, 2018 WL 2440244, at *2, ¶ 9 (Ariz. App. May 31, 2018) (mem. decision) ("DCS appropriately asked this court to suspend the appeal while it filed proposed findings of fact and conclusions of law in support of the court's order.").

Where the record is so clear that the appellate court does not need the aid of findings, the court may waive such defect on the ground that the error is not substantial in that case. *See City of Phoenix v. Consolidated Water Co.*, 101 Ariz. 43, 45 (1966) ("Of course, the purpose of findings is to tell someone else how the court reached its decision." (quoting *Carpenters Union, Local 131 v. Cisco Constr. Co.*, 266 F.2d 365, 369 (9th Cir. 1959))); *Gilliland v. Rodriquez*, 77 Ariz. 163, 167–68 (1954) (unnecessary to make findings on undisputed matters). This is not such a case.

¶28 A child may be dependent when a parent is *currently* unwilling or unable to protect the child from abuse or neglect. *See* A.R.S. § 8-201(25)(a) (neglect includes the inability or unwillingness of a parent to provide his or her child with supervision, food, clothing, shelter or medical care if the result is an unreasonable risk of harm to the child's health or welfare); *Shella H. v. DCS*, 239 Ariz. 47, 50, ¶ 14 (App. 2016). A parent's prior failure to protect may be evidence of that parent's continuing inability to care for the child when: "(1) the [prior] conditions were sufficient to declare the child dependent; (2) the threat giving rise to those conditions remains unresolved; and (3) the threat continues to pose an imminent risk of harm to the child." *Aaron W. v. DCS*, 1 CA-JV 19-0039, 2019 WL 4695887, at *8, ¶ 37 (Ariz. App. Sept. 26, 2019) (mem. decision); *accord Cochise County Juv. Action No. 5666-J*, 133 Ariz. 157, 161 (1982) (speculative risk is insufficient); *Shella H.*, 239 Ariz. at 51, ¶ 16 (substantiated and unresolved threat); *Pima County Juv. Dependency Action No. 96290*, 162 Ariz. 601, 604 (App. 1990) (imminent risk of harm). Here, without findings to support the court's implicit conclusions, DCS's mere allegation that Mother was currently unable to care for Kourtney cannot be upheld.

¶29 DCS argues that "the record reasonably establishes that Mother left Kourtney with an inappropriate caregiver for two weeks after learning that Father was once again abusing substances."[4] DCS bore the burden of establishing that Mother failed to protect Kourtney during the time it alleges. *See 96290*, 162 Ariz. at 604. To meet its burden, DCS had to

---

[4] Because DCS failed to connect its factual allegations to the legal definition of neglect, and because DCS did not allege that Mother was unwilling or unable to provide food, clothing, shelter or medical care, we presume DCS's neglect allegation is that Mother was unable or unwilling to provide "supervision" because she failed to fly Kourtney back to Arkansas within two weeks after DCS notified her that Father was suspected of using "substances." We note that DCS also did not remove the child during this same two-week period.

prove that Mother knew or had reason to know that leaving Kourtney with Father posed an unreasonable risk to her health or welfare.

¶30         Regarding the domestic violence allegation, DCS failed to establish that Mother knew or had reason to know that leaving Kourtney with Father placed the child at an unreasonable risk of being exposed to domestic violence. At the time of the hearing, DCS withdrew the allegation that "Father has a history of domestic violence," and it did not produce evidence that Father was previously involved in instances of domestic violence. No evidence supported the allegation that Mother should have known Kourtney would witness domestic violence in Father's home.

¶31         Regarding its allegation that Mother knew Father was abusing substances, DCS argues that "[t]he juvenile court found that Mother failed to protect Kourtney when she left Kourtney in Father's care for two weeks after finding out that he was abusing methamphetamine and cocaine. Because of this, Kourtney was subjected to . . . substance abuse she should not have had to witness. Reasonable evidence supports such findings." Presumably, DCS means that the juvenile court "implicitly" made these findings and conclusions because, as discussed above, the juvenile court did not make any express findings.

¶32         Unlike domestic violence, there was uncontroverted evidence that Father had a history of substance abuse, he tested positive for illegal substances in May 2018, and DCS notified Mother on August 7, 2018, that it was concerned about Father's use of "substances."

¶33         During the trial, DCS and its witnesses did not mention any drug by name but referred to unidentified "substances." Mother did not send Kortney to Father until June 2018, and, after the drug test he took in May, the only substance Father continued to test positive for was THC. Indeed, at the dependency hearing, DCS withdrew its allegation that Father did not have a medicinal marijuana card. A reasonable inference would be that the only "substance" Father was using while Kourtney was in his care was marijuana. DCS did not allege or establish that Father was illegally using marijuana, was abusing marijuana, or that Mother was aware of any such abuse. Accordingly, without additional findings, we cannot determine whether Kourtney was exposed to any substance abuse while she was in Father's care.

¶34         Finally, referring to an earlier occasion on which Mother allowed her step-grandfather to care for her children, DCS alleged: "Mother has a history of failing to protect her children. Mother left her children in

the care of a registered sex offender." Again, DCS failed to connect how Mother's knowledge that her step-grandfather was a registered sex offender proves that Mother knew or should have known that leaving the children in his care six years earlier posed an unreasonable risk of imminent harm to Kourtney's current health or welfare, or that there was a continuing risk of harm.

### C.     On Remand the Court Must Allow the Parties to Present Additional Evidence.

¶35     A dependency adjudication must be "based upon the circumstances existing at the time of the adjudication hearing" and not merely on past circumstances. *Shella H.*, 239 Ariz. at 50, ¶ 12; *see also* A.R.S. § 8-201(15)(a)(i) (defining a dependent child in the present tense as one who "*has* no parent or guardian, or one who *has* no parent or guardian willing to exercise or capable of exercising such care and control" (emphasis added)); A.R.S. § 8-201(15)(a)(iii) (defining a dependent child in the present tense as one whose "home *is* unfit by reason of abuse, neglect, cruelty or depravity by a parent" (emphasis added)). In this case, the dependency hearing occurred over six months ago. On remand, if a party requests to present additional evidence to show the current circumstances, the court must grant the request.

### CONCLUSION

¶36     We vacate the juvenile court's dependency order and remand for further proceedings consistent with this opinion.

