IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

GABRIEL MICHAEL MESA, *Petitioner/Appellant*,

*v.*

RACQUEL DIANE O'CONNOR, *Respondent/Appellee*.

No. 1 CA-CV 24-0414 FC

FILED 01-28-2025

Appeal from the Superior Court in Maricopa County
No. FC2022-093788
The Honorable Steven McCarthy, Judge

**VACATED AND REMANDED IN PART**

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire (argued) & Alexandra Sandlin
*Counsel for Petitioner/Appellant*

David Dick and Associates, Chandler
By David Alan Dick
*Counsel for Respondent/Appellee*

## OPINION

Judge Paul J. McMurdie delivered the Court's opinion, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

**M c M U R D I E**, Judge:

¶1　　　　In this post-decree family matter, Gabriel Mesa ("Father") appeals the orders awarding Racquel O'Connor ("Mother") sole legal decision-making of the parties' child, granting Father parenting time "at the child's discretion," and ordering the post-judgment appointment of a therapeutic interventionist ("TI") to help repair Father's relationship with the child.

¶2　　　　We hold that a superior court may order parenting time at the child's discretion after analyzing the child's best interests. In this case, the superior court considered the statutory best interests factors and did not abuse its discretion by concluding that Father should have no parenting time without the child's consent. We also hold that the court improperly appointed a TI under Arizona Revised Statutes ("A.R.S.") § 25-405 after resolving the parenting time and legal decision-making issues. Thus, we vacate the orders appointing a TI and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶3　　　　We view the evidence in the light most favorable to upholding the superior court's decision. *Baker v. Meyer*, 237 Ariz. 112, 113, ¶ 2 (App. 2015).

¶4　　　　Mother and Father married in 2007 and had a child ("Child") shortly after. By early 2009, the parties separated, and by September, they divorced.

¶5　　　　In 2019, Child, born female, informed Mother that she was transgender. A year later, Child started using male pronouns and identifying as male. At first, no one informed Father of the transition because Child feared his reaction. Once informed, Father's reaction harmed his relationship with Child. Father sent a text message to Mother telling her to "[l]et me grieve the loss of my daughter and leave [m]e alone and stop trying to build a relationship with [son]. I don't want to know that person."

Father often misgendered Child and used his pre-transition name. When Child asked Father to use his chosen name, Father said that his birth name was the only thing he gave Child, and his name would stay that way. Father also once "blew up" at Child, which included screaming at him and driving erratically with him in the car.

¶6            After Child told Father of the transition, Father said he loves Child for who he is but refused to say he loved him as a son. When Child went to a school where he could register as male, Father tried to "out" Child at the school by showing up with documentation that showed Child was biologically female. Father did so without notice and sought to take Child out of the school. Child became upset and was surreptitiously taken out of the school, helped by the school resource officer. Child had frequent nightmares about Father shooting up the school and kidnapping him.

¶7            Father withdrew consent for Child to have a medically necessary colonoscopy, and he withdrew consent for therapy days after Child's suicide attempt. Father repeatedly refused to consent to therapeutic treatment for Child's mental health issues.

¶8            Based on Father's response to his transition, at 14, Child refused to allow Father to exercise the court-ordered parenting time or talk with him. Child, who was 16 at the time of the trial, conveyed he wanted no contact with Father until he apologized for his initial reaction to Child's transition. Child considered seeking emancipation if he had to live with Father.

¶9            In February 2022, Mother petitioned the superior court to modify the decision-making and parenting time orders. Father counter-petitioned to enforce legal decision-making and to modify parenting time. The court issued a temporary order, including plans for a comprehensive family evaluation, which was never completed. Two years later, the court held a trial on the issues raised in the competing petitions. Both Mother and Father testified about their relationships with Child, issues surrounding their shared medical decision-making, as well as all parties' mental health.

¶10            After the trial, the court issued an order modifying legal decision-making and parenting time ("Parenting Order"). The order read that "[d]espite any initial confusion and shock regarding the child's transition, during the trial, Father unequivocally expressed acceptance of his child and a fervent desire to be involved in the child's life." Still, the court explained that Child "wishe[d] to have complete discretion over

interactions with Father." Because Child was almost an adult, the court "heavily weighed the wishes of the child" in its determination.

¶11     The court granted sole legal decision-making to Mother. While not ordering a structured parenting schedule for Father, the court allowed Father parenting time "at the child's discretion" and required Child and Father to engage in reunification therapy. Two weeks later, the court filed an order appointing a TI ("Appointment Order") for Father and Child's reunification, which identified the court's authority for the appointment and elaborated on the scope and purpose of the appointment.

¶12     Father appealed the Parenting and Appointment Orders. We have jurisdiction under the Arizona Constitution, Article 6, Section 9, and A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶13     Father raises four arguments on appeal: (1) the superior court erred by making his parenting time at Child's discretion, thereby delegating the best interests determination to Child and failing to create a specific parenting schedule; (2) the court restricted Father's parenting time without complying with A.R.S. § 25-411(J); (3) the court erred by granting Mother sole legal decision-making based on her status as Child's primary caregiver and Child's wishes; and (4) the court lacked the authority after finalizing the Parenting Order to issue the Appointment Order, which required Father and Child to participate in TI services.

¶14     We review the superior court's award of legal decision-making and parenting time for an abuse of discretion. *Gish v. Greyson*, 253 Ariz. 437, 444, ¶ 31 (App. 2022). An abuse of discretion occurs when the court commits an error of law in reaching a discretionary decision, *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019), or the record is "devoid of competent evidence to support the decision," *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018) (quoting *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009)). We defer to a court's factual findings unless they are clearly

erroneous. *Id.*[1] We review the interpretation of statutes and conclusions of law *de novo*. *Gish*, 253 Ariz. at 444, ¶ 31.

**A.     A Court Is Not Prohibited from Awarding Parenting Time Based On a Child's Discretion if It Is in the Child's Best Interests and Supported by the Evidence.**

**1.     The Court Did Not Delegate the Best Interests Determination to Child.**

¶15     Father claims that by only allowing parenting time at the Child's discretion, the court delegated the parenting time decision to Child, ignoring its duty to determine the Child's best interests. We disagree.

¶16     The superior court has an independent duty to determine the child's best interests. A.R.S. § 25-403(A) ("The court shall determine legal decision-making and parenting time . . . in accordance with the best interests of the child."); *see also Christopher K. v. Markaa S.*, 233 Ariz. 297, 301-02, ¶¶ 20-23 (App. 2013) (A court must explain its evaluation of the evidence in the best interests finding.). The child's best interests "are for the court alone to decide" and not delegable to another party. *DePasquale v.*

---

[1]     While the superior court summarized the evidence presented at the trial, it did not resolve some factual disputes. We caution fact-finding courts against this procedure. The superior court is in the best position to reach factual conclusions or resolve factual disputes, s*ee Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015), and a summary leaves appellate courts trying to divine its findings. Specific findings aid all parties and the court in determining the child's best interests in the future. *See Reid v. Reid*, 222 Ariz. 204, 209, ¶ 18 (App. 2009); *Backstrand v. Backstrand*, 250 Ariz. 339, 344, ¶ 18 (App. 2020) (Whether imposed by the court or agreed to by the parties, the parenting provisions of a decree or other order represent a snapshot of the child's best interests and form the baseline from which future courts assess whether a material change of circumstances has occurred.). Father does not raise whether the testimonial summary violated the requirement of factual findings as an issue on appeal, and so any error is waived. *See Francine C. v. Dep't. of Child Safety*, 249 Ariz. 289, 297, ¶ 19 (App. 2020) ("Generally, an appellate court may infer that the superior court has made whatever additional findings are necessary to sustain its judgment . . . if the additional findings are reasonably supported by the evidence and do not conflict with any of the court's express findings.").

*Superior Court*, 181 Ariz. 333, 336 (App. 1995); *Nold v. Nold*, 232 Ariz. 270, 273-74, ¶ 14 (App. 2013).

¶17　　　Father claims our decisions in *DePasquale* and *Nold* prohibited the court from ordering Father's parenting time to be "at the child's discretion" because to do so delegated its responsibility. But both cases considered a different scenario than what occurred here. In *DePasquale*, the superior court stated it would adopt any recommendation by a psychologist before the evidentiary hearing, and it then adopted the psychologist's recommendation without conducting a hearing. 181 Ariz. at 334. We held the court erred by adopting the psychologist's recommendation without independently considering any of the best interests factors or holding a hearing. *Id.* at 335-37. In *Nold*, the superior court used a custody evaluation as the baseline for its decision, then found "no persuasive evidence established a sound reason for deviating from the parenting time schedule [the custody evaluator] suggested." 232 Ariz. at 273-74, ¶ 14 (alteration in original). We held the court delegated its obligation to weigh the evidence independently in making a best interest finding and abused its discretion because it "fail[ed] to make the statutorily mandated findings." *Id.* at 273-74, ¶¶ 14-15.

¶18　　　In both cases, the superior court erred by failing to evaluate independently the child's best interests under A.R.S. § 25-403(B). *See* A.R.S. § 25-403(B) (In a contested legal decision-making or parenting time case, the court must consider all relevant best interests factors.); *DePasquale*, 181 Ariz. at 336; *Nold*, 232 Ariz. at 273-74, ¶¶ 12, 15. But the court here made no such error. Instead, the court conducted an evidentiary hearing and made findings on the record for the A.R.S. § 25-403(A) factors. It made additional findings on the A.R.S. § 25-403.01(B) factors and the lack of domestic violence, substance abuse, or sex offenses under §§ 25-403.03, -403.04, and -403.05. Thus, the error noted in *DePasquale* and *Nold* does not exist here.

¶19　　　Contrary to Father's claim, the court determined Child's best interests. It weighed all relevant factors before it determined it was in Child's best interest to be in control of his relationship with Father, and the evidence of Father and Child's strained relationship supports the court's conclusion. There is no "hard-and-fast rule" about what is in a child's best interests, *Evans v. Evans*, 116 Ariz. 302, 307 (App. 1977), and the court has broad discretion to determine what fits the bill, *Orezza v. Ramirez*, 19 Ariz. App. 405, 409 (1973). We will only disturb a ruling premised on a best interests finding if the court abused its discretion in making that finding. *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 120, ¶ 36 (2018). Father has

not shown that the court abused its discretion when it weighed the evidence, analyzed all relevant factors, noted those on the record, and entered the parenting order. Thus, the superior court did not err by assigning Father parenting time at Child's discretion after independently considering the best interest factors and making a conclusion based on that assessment.

### 2. The Court Created a Practical and Maximized Parenting Time Schedule.

¶20 Father also argues the court failed to create a parenting schedule that maximized his parenting time or that gave a practical schedule for holidays and school vacations, violating A.R.S. § 25-403.02. *See* A.R.S. § 25-403.02(B) ("[T]he court shall adopt a parenting plan that . . . maximizes [parents'] respective parenting time."); A.R.S. § 25-403.02(C)(3) ("Parenting plans shall include . . . [a] practical schedule of parenting time for the child, including holidays and school vacations."). But the lodestar for parenting time is not maximizing parenting time, but focusing on what parenting time arrangement is in the child's best interests. *See, e.g.*, A.R.S. § 25-403.02 ("*Consistent with the child's best interests* . . . the court shall adopt a parenting plan that . . . maximizes [parents'] respective parenting time.") (emphasis added); A.R.S. § 25-103(B) (It is the public policy of Arizona that "it is in *a child's best interest*" to have "substantial, frequent, meaningful and continuing parenting time with both parents.") (emphasis added); *Dunbar v. Dunbar*, 102 Ariz. 352, 354 (1967) ("The final determination of custody in a divorce action is and must be determined by what the court considers to be in the best interest of the child. The wishes of the parents, of course, may and should be considered, but their happiness and their desires will never be allowed to interfere with the child's true welfare."); *Gonzalez-Gunter v. Gunter*, 249 Ariz. 489, 492, ¶ 12 (App. 2020); *Smith v. Smith*, 253 Ariz. 43, 47, ¶ 18 (App. 2022); *J.F. v. Como*, 253 Ariz. 400, 403–04, ¶¶ 14–19 (App. 2022) ("[A] child's best interest represents the lens through which Arizona courts must review and decide all custody disputes.").

¶21 The superior court has the discretion to determine parenting time "based on all the evidence before it." *Gonzalez-Gunter*, 249 Ariz. at 492, ¶ 11. In some cases, the statutorily mandated parenting time plan will not include a specified time for a parent if doing so is not in the child's best interests. *See, e.g.*, *Matter of Lora PP. v. Alphonso PP.*, 200 N.Y.S.3d 194, 196 (N.Y. App. Div. 2023) ("Although parenting time with a noncustodial parent is generally presumed to be in a child's best interests, a structured parenting time schedule is not required where it would be detrimental to the child's welfare."); *State ex rel. Kaaden S. v. Jeffery T.*, 932 N.W.2d 692, 704

(Neb. 2019) ("The Parenting Act does not require any particular parenting time schedule to accompany an award of either sole or joint physical custody, and there exists a broad continuum of possible parenting time schedules that can be in a child's best interests."); Unif. Marriage & Divorce Act § 407 cmt. (Unif. L. Comm'n 1973) ("With two important exceptions, this section states the traditional rule for visitation rights. The general rule implies a 'best interest of the child' standard. Although the judge should never compel the noncustodial parent to visit the child, visitation rights should be arranged to an extent and in a fashion which suits the child's interest rather than the interest of either the custodial or noncustodial parent.").

¶22　　　Here, the superior court determined, based on the evidence, that it was in Child's best interests that Father have no specific parenting time and instead let Child determine whether he wanted to spend time with Father. Given the record of hostility between Father and Child, the superior court did not abuse its discretion by coming to that conclusion. And contrary to Father's position, the superior court's Parenting Order met the requirement that a parenting plan include a practical schedule. Under the order, Mother has all parenting time, including holidays and school vacations, subject only to Child's decision to have parenting time with Father. Thus, the court did not abuse its discretion by creating a parenting plan consistent with its best interests findings.

## B.　　The Superior Court Could Reduce Father's Parenting Time.

¶23　　　Father contends the superior court erred by reducing his scheduled parenting time to nothing without making a finding that his parenting time "would endanger seriously the child's physical, mental, moral or emotional health." A.R.S. § 25-411(J). But A.R.S. § 25-411(J) bars the court from "restrict[ing] a parent's parenting time rights unless it finds that the parenting time would endanger seriously the child's physical, mental, moral or emotional health." *Id.* The "parenting time right" is distinct from "parenting time." *Gonzalez-Gunter*, 249 Ariz. at 492, ¶¶ 13-14. Parenting time is the schedule of time when a parent cares for a child, so a change in parenting time is a change in the allotment.[2] But a restriction on

---

[2]　　　"'Parenting time' means the schedule of time during which each parent has access to a child at specified times. Each parent during their scheduled parenting time is responsible for providing the child with food, clothing and shelter and may make routine decisions concerning the child's care." A.R.S. § 25-401(5).

parenting time rights restricts how that parent may oversee the child, such as by requiring supervised parenting time. *Gonzalez-Gunter*, 249 Ariz. at 492, ¶ 13. In other words, parenting time rights encompass what a parent may do during his or her parenting time. A restriction that limits the parent's ability to parent during his or her parenting time is a parenting time right restriction.

¶24    While the court may only restrict a parent's parenting right if it would "endanger seriously the child's physical, mental, moral or emotional health," A.R.S. § 25-411(J), this heightened test does not apply to changes or reductions in parenting time, *Gonzalez-Gunter*, 249 Ariz. at 492, ¶ 13; *Berkel v. Berkel*, 1 CA-CV 19-0829 FC, 2020 WL 7353763, at *3, ¶ 13 (App. Dec. 15, 2020) (mem. decision) ("But the 'endanger seriously' finding is required only to 'restrict' parenting time rights, which refers not to reducing parenting time, but rather to placing conditions on *how* a parent may exercise parenting time."). Instead, the court may modify or reduce parenting time by (1) determining "whether a change of circumstances materially affecting the welfare of the child" exists, then (2) determining "whether a change in custody will be in the best interests of the child." *Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020) (quoting *Black v. Black*, 114 Ariz. 282, 283 (1977)).

¶25    Father's parenting time was reduced, but both parties agreed that there had been a change of circumstances materially affecting Child's welfare, and the court determined a change in parenting time would be in Child's best interests. *Supra* ¶19. Thus, the court did not err by reducing Father's parenting time.

## C.    The Court Did Not Restrict Father's Parenting Time Right under A.R.S. § 25-411(J).

¶26    Even though the court properly reduced Father's parenting time, we also consider whether it improperly restricted his parenting time right under A.R.S. § 25-411(J) by ordering reunification therapy or parenting time at Child's discretion.

¶27    While "parenting time right" is not defined, the court placing a "condition" on parenting time, such as "limiting the manner that parenting time is exercised," is a restriction of the right. *See Gonzalez-Gunter*, 249 Ariz. at 492, ¶ 13; *see generally* A.R.S. § 25-411(J). A parenting time right may be restricted by such a condition only when the parenting time itself would "endanger seriously the child's physical, mental, moral or emotional health." A.R.S. § 25-411(J). Although the court must make findings

consistent with § 25-411(J), these findings need not be "reduced to writing or stated on the record." *Hart v. Hart*, 220 Ariz. 183, 188, ¶ 16 (App. 2009).[3]

¶28        Here, the court required Child and Father to engage in reunification therapy and allowed Father parenting time conditioned on Child's choice to spend time with Father. But neither contested part of the court's orders amounted to a parenting right restriction.

¶29        The court ordered reunification therapy to "support the relationship between family members." *See* Lynne M. Kenney & Diana Vigil, *A Lawyer's Guide to Therapeutic Interventions in Domestic Relations Court*, 28 Ariz. St. L.J. 629, 650 (1996) (Therapeutic reunification generally consists of progressive contact between a child and parent proceeding with stepwise approximations to the parenting order at a rate supporting the child's well-being.). This is not a restriction on how Father can parent. Clinical services offered by TIs, including reunification therapy, "involve some degree of psychological treatment or dispute resolution." *Id.* at 635. The role of an interventionist more closely aligns with supporting the family than being an arm of the court. *See id.* This means that therapeutic interventions, including reunification therapy, are generally independent of a parent exercising their parenting time because the focus is clinical, not legal.

¶30        Additionally, Father's parenting time being conditioned on Child's decision to spend time with him is not the type of "condition" contemplated in A.R.S. § 25-411(J). Supervised parenting time, the only condition that Arizona courts have determined to restrict parenting time rights, *see Hart*, 220 Ariz. at 187, ¶¶ 16, 19, seeks to protect the child at the expense of the parent's ability to parent. *Cf.* Kenney & Vigil, *supra* ¶ 29, at 651 (Therapeutic supervised visitation is "more restrictive" than steps like reunification and can be implemented to protect the child rather than meet the parent's needs.); *accord* A.R.S. § 25-411(J) (A court may only restrict the parenting time right if unfettered parenting time would seriously endanger the child.); *Hart*, 220 Ariz. at 187, ¶ 16. Ordering parenting time at the Child's discretion is not a condition on the parenting time, and, in this case, the superior court made it explicit that Father had no parental fitness concerns. If Child chooses to spend time with Father, Father will be free to

---

[3]        *Hart* considered A.R.S. § 25-411(D), which is identical to the current version of § 25-411(J) except for the subsection letter. *Compare* A.R.S. § 25-411(D) (2008) *with* A.R.S. § 25-411(J) (2025).

parent Child as he sees fit. Thus, Father's discretionary parenting time does not restrict his parenting time right.

¶31        The court reduced Father's parenting time under the correct test and did not restrict his parenting time right. Thus, the court did not violate A.R.S. § 25-411(J).

**D.        The Superior Court Did Not Err by Granting Mother Sole Legal Decision-Making.**

¶32        Father argues the superior court erred by granting Mother sole legal decision-making based on her status as the primary caregiver and Child's wishes. According to Father, relying on these factors is impermissible.

¶33        Father argues the court erroneously allowed one factor—the child's wishes—to override all other factors. But, as discussed above, the court weighed all factors but strongly considered Child's wishes. *Supra* ¶¶ 18-19. This factor did not override the others but outweighed them by comparison.

¶34        Father also alleges that considering Mother's position as Child's primary caretaker violated our holding in *Barron v. Barron* that "the court err[s] by favoring parenting time for Wife over Husband based on the fact that Wife had been the children's primary caregiver." 246 Ariz. 580, 586, ¶ 15 (App. 2018), *vacated in part on other grounds by* 246 Ariz. 449 (2019). In *Barron*, we came to this conclusion because the legislature removed the child's primary caregiving as a best interest factor. *Id.* And while primary caregiver status is not a factor under A.R.S. § 25-403, *Barron* acknowledged that primary caregiver status may weigh into other factors, such as the relationship between the parents and the child. *Id.* at 586, ¶ 16; *see also* A.R.S. § 25-403(A)(1) (The court must consider "[t]he past, present and potential future relationship between the parent and the child" as a best interest factor.). Thus, it is permissible for the court to consider Mother's historical caregiver status under other factors in the best interests determination.

¶35        Even if Father's claim were correct, other factors supported the court awarding Mother sole legal decision-making. A court may only modify legal decision-making in accordance with the child's best interests after considering the enumerated factors in A.R.S. §§ 25-403(A) and 25-403.01(B). In its order, the court described the parties as having "a complete inability to work together to make decisions that are in the best interest[s] of the child" and believed that "joint decision-making is logistically [im]possible." *See* A.R.S. § 25-403.01(B)(3) (the ability of the

parents to cooperate in decision-making); A.R.S. § 25-403.01(B)(4) (whether joint decision-making is logistically possible). Child refused to engage with Father at the time of the order and has resided with Mother during his transition. A.R.S. § 25-403(A)(1) (the past, present, and potential relationship between the parent and child). And Child "unequivocally desires to remain in Mother's sole care, custody and control." *See* A.R.S. § 25-403(A)(4) (a child of suitable age and maturity's wishes as to the legal decision-making and parenting time).

¶36 Father points to the best interests factors that support granting sole legal decision-making to him. Father may disagree about the weight the superior court gave the factors, but we defer to the superior court's findings unless they are clearly erroneous. *Gish*, 253 Ariz. at 444, ¶ 31. The court does not abuse its discretion when sufficient evidence supports its findings. *Smith*, 253 Ariz. at 48, ¶ 22. The record supports the court's resolution of the factors, and the court did not err by assigning Mother sole legal decision-making.

## E. A Court Has the Authority to Make Post-Decree Appointments under A.R.S. § 25-410(B).

¶37 Father argues the court exceeded its authority by ordering a TI after resolving the parenting issues in the Parenting Order. To support his argument, Father notes that A.R.S. § 25-405, the statutory authority the court relied on, does not support the court's appointment. A court may seek the advice of professionals under § 25-405(B), but only when a question about legal decision-making authority or parenting time is pending before the court. *Paul E. v. Courtney F.*, 246 Ariz. 388, 397, ¶ 37 (2019). Once the court enters an order establishing legal decision-making authority and parenting time, it does not need professional assistance, and the appointment authority under § 25-405(B) ceases. *Id.*[4]

---

[4] Arizona Rule of Family Law Procedure 95, which grants courts the authority to "order parties to engage in behavioral or mental health services, including counseling and therapeutic interventions," does not independently allow courts to appoint a TI post-decree. "[Rule 95] is a procedural rule and cannot enlarge the court's authority beyond that granted by statute." *Paul E.*, 246 Ariz. at 398, ¶ 40. Thus, Rule 95's scope is limited to when there are outstanding issues of legal decision-making or parenting time pending unless another statutory basis applies. *Id.* at 397, 398, ¶¶ 37, 40.

¶38     Here, the court explicitly made its appointment under A.R.S. § 25-405. It ordered the appointment of a TI in the same order that it resolved the outstanding issues of decision-making and parenting time. It elaborated on the TI's appointment by creating the Appointment Order after it entered the Parenting Order. Thus, the court erred by violating the rule in *Paul E.* when it invoked A.R.S. § 25-405(B) to appoint a TI in its Parenting and Appointment Orders. 246 Ariz. at 397, ¶ 37.

¶39     But a court can appoint a "local social service agency" after deciding parenting time and legal decision-making authority. A.R.S. § 25-410(B). Consistent with the supervisorial authority granted to the courts under A.R.S. § 25-410(B), our supreme court enacted Arizona Rule of Family Law Procedure 81, which addresses a court's post-decree authority.

¶40     Supervisorial appointment after a decree is subject to different restrictions and requires more findings than the appointment of a professional under A.R.S. § 25-405(B). Either parent may request an appointment, or the court must find the child's physical health would be endangered or their emotional development significantly impaired without post-decree supervision. A.R.S. § 25-410(B). A court must also determine that an appointment would serve the child's best interests. *Id.* The post-decree supervision must be conducted by a "local social service agency" with fees "approved by the supreme court." *Gish,* 253 Ariz. at 447-48, ¶ 50 (citing A.R.S. § 25-410(B)). This supervision may only be ordered to ensure the legal decision-making and parenting time terms are carried out as ordered. A.R.S. § 25-410(B). And the order must contain specific terms, including the allocation of payment, who must schedule appointments, what types of reports are required to be given to the court and with what frequency, and the duration of supervision. Ariz. R. Fam. L.P. 81(c)(3).

¶41     The court did not make the requisite determinations or establish the required terms in the Appointment Order under A.R.S. § 25-410(B). Similarly, the court made none of these determinations when it ordered the appointment in the Parenting Order. As a result, we cannot uphold the Appointment Order or the TI appointment in the Parenting Order under A.R.S. § 25-410(B) and Rule 81. We vacate the Appointment Order and the portions of the Parenting Order appointing a TI. We remand for the court to comply with the statute and Rule if it determines that appointing a TI is warranted.

**ATTORNEY'S FEES AND COSTS**

¶42 We decline Mother's request for attorney's fees because she failed to cite authority for such an award. ARCAP 21(a)(2); *Ezell v. Quon*, 224 Ariz. 532, 539, ¶ 31 (App. 2010). Mother requests that we award her a portion of her superior court attorney's fees, but we decline to consider her request because she did not bring a cross-appeal. ARCAP 13(b)(2) (An appellate court may enlarge an appellee's rights or reduce an appellant's rights only if the appellee filed a notice of cross-appeal.). Because Mother has prevailed on most of the issues raised, we award her costs upon compliance with ARCAP 21.

¶43 Father requests attorney's fees and costs under A.R.S. § 25-324 and ARCAP 21. Both parties presented minimal evidence of their finances, and neither side acted unreasonably on appeal. Per our discretion, we decline to award Father his fees and find he is not the prevailing party on appeal.

**CONCLUSION**

¶44 We vacate and remand the court's Appointment Order and the portions of the Parenting Order appointing a TI. On remand, the court must allow both parties, if requested, to present new evidence for events since the entry of the previous orders. *See Francine C. v. Dep't. of Child Safety*, 249 Ariz. 289, 300, ¶ 35 (App. 2020) (Given the time from the original hearing, "if a party requests to present additional evidence to show the current circumstances, the court must grant the request.").[5]



AMY M. WOOD • Clerk of the Court
FILED:            JR

---

[5] We note that at the date of the issuance of this opinion, Child is now 17.