NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

TAYLOR JOURDAN MORALES, *Petitioner/Appellee*,

*v.*

MYLES GREGORY MORALES, *Respondent/Appellant*.

No. 1 CA-CV 24-0923 FC

FILED 07-29-2025

Appeal from the Superior Court in Maricopa County
No. FC2023-053120
The Honorable Julie Ann Mata, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Tiffany & Bosco, P.A. Phoenix
By Kelly L. Mendoza, Brendyn Edwards
*Counsel for Respondent/Appellant*

M&M Law Group, PLLC, Gilbert
By Alexus C. Mamood
*Counsel for Petitioner/Appellee*

———————————

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Andrew M. Jacobs and Judge Michael S. Catlett joined.

———————————

**W I L L I A M S**, Judge:

¶1        Myles Gregory Morales ("Husband") appeals from the decree dissolving his marriage to Taylor Jourdan Morales ("Wife"). Husband challenges the superior court's rulings concerning legal decision-making, spousal maintenance, child support, and attorney's fees. For the following reasons, we vacate the spousal maintenance and child support orders, as well as the court's denial of Husband's request for attorney's fees and costs, and remand for proceedings consistent with this decision. We affirm in all other respects.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        The parties married in 2019 and together have one child, born in 2020. In 2023, Wife petitioned for divorce.

¶3        The parties agreed to equal parenting time and the division of certain property. They could not, however, agree on several other issues, including legal decision-making, spousal maintenance, child support, and attorney's fees. The superior court held a one-day trial on the contested issues and entered a decree of dissolution of marriage.

¶4        In the decree, and specific to this appeal, the superior court: (1) granted the parties joint legal-decision making authority, (2) denied Husband's request for spousal maintenance, (3) ordered Wife to pay Husband monthly child support of $1,244, and (4) denied Husband's request for attorney's fees.

¶5        Husband timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I.    Legal Decision-Making Authority

**¶6**       Husband challenges the superior court's grant of joint legal decision-making authority to the parties. He contends the court should have granted him final legal decision-making authority rather than permitting the parties to enroll the child in the daycare/preschool program of their choice during their respective parenting time.

**¶7**       We review legal decision-making determinations for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the [superior] court's decision, is devoid of competent evidence to support the decision" or the court has committed an error of law "in the process of reaching [a] discretionary conclusion." *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009) (internal quotations and citations omitted). On review, we "infer from any judgment the findings necessary to sustain it if such additional findings do not conflict with express findings and are reasonably supported by the evidence." *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984) (internal quotation and citation omitted).

**¶8**       Legal decision-making is the "right and responsibility to make all nonemergency legal decisions for a child including those regarding education, health care, religious training and personal care." A.R.S. § 25-401(3). Sole legal decision-making "means one parent has the legal right and responsibility to make major decisions for a child." A.R.S. § 25-401(6). Joint legal decision-making, on the other hand, "means both parents share decision-making and neither parent's rights or responsibilities are superior except with respect to specified decisions as set forth by the court or the parents in the final judgment or order." A.R.S. § 25-401(2). As contemplated by A.R.S. § 25-401(2), a court may "fashion hybrid" legal decision-making orders creating "shared legal decision-making with the possibility that one parent will exercise a superior right [final decision-making authority] if the parents cannot reach a joint agreement in good faith." *Nicaise v. Sundaram*, 245 Ariz. 566, 568–69, ¶¶ 13–15 (2019).

**¶9**       In evaluating legal decision-making, the superior court must determine the best interests of the child by considering "all factors that are relevant to the child's physical and emotional well-being," including, as relevant here, the child's adjustment to home, school, and community.

A.R.S. § 25-403(A). To determine the appropriate "level of decision-making," a court must also consider:

1. The agreement or lack of an agreement by the parents regarding joint legal decision-making.

2. Whether a parent's lack of an agreement is unreasonable or is influenced by an issue not related to the child's best interests.

3. The past, present and future abilities of the parents to cooperate in decision-making about the child to the extent required by the order of joint legal decision-making.

4. Whether [a] joint legal decision-making arrangement is logistically possible.

A.R.S. § 25-403.01(B).

**¶10**     Before trial, each party requested joint legal decision-making with final decision-making authority. Both parties acknowledged they had been unable to reach an agreement concerning childcare, with each asserting the other had failed to prioritize the child's best interests.

**¶11**     At trial, Wife testified that at the time she petitioned for divorce, the child was enrolled in a daycare program with restricted hours that could not accommodate her full-time work schedule. Wife stated she presented Husband with "[n]umerous options" for other programs, and offered into evidence text messages, emails, and letters to that effect. But Husband provided no alternatives or response other than insisting the child remain in the same program. Unable to reach an agreement, Wife submitted an enrollment application for the child at a preschool. Husband withdrew the child's application after Wife refused. Wife then unilaterally enrolled the child at a different preschool she believed "had a quality educational program" and provided "consistency" as well as "a nurturing, welcoming environment." Wife invited Husband to tour and discuss the preschool, but he did not. Instead, he maintained that the child should remain at the daycare. When Wife informed Husband she had enrolled the child in the preschool only during Wife's parenting time, Husband suggested an alternative to the daycare—a summer camp at a rock-climbing gym. Given the short duration of the summer camp program and her need for long-term, reliable childcare, Wife refused. Wife testified the child smoothly transitioned to the preschool from the daycare and quickly made new friends in the program.

¶12     Husband, in turn, testified he firmly believed the child should remain at the daycare and stated he offered to assist Wife with childcare if she needed help due to the daycare's restricted hours, but she declined. Husband also testified he did not approve of the child's enrollment at the preschool and acknowledged repeatedly contacting the preschool to express his disapproval. When asked why he opposed the child's preschool enrollment, Husband said the facility is "very cluttered" and "very disorganized." He stated he also objects to the religious component of the preschool, explaining he does not want the child exposed to Jewish teachings or practices because neither he nor Wife are adherents of the faith. To illustrate the religious influence of the preschool, Husband recounted the child recognizing Jewish holidays and spontaneously reciting Jewish prayers and singing Jewish songs. Husband also felt that enrolling the child in different programs during the parties' respective parenting time was not in the child's best interests. Husband acknowledged the child seemed happy at the preschool and has made friends there.

¶13     "The [superior] court is authorized to make childrearing decisions in limited, statutorily prescribed circumstances" and may "intervene when parents cannot agree on childrearing decisions to be included in a parenting plan." *Paul E. v. Courtney F.*, 246 Ariz. 388, 395, ¶¶ 25–26 (2019). A parenting plan "shall include," among other things, "[e]ach parent's rights and responsibilities for the personal care of the child and for decisions in areas such as education, health care and religious training." A.R.S. § 25-403.02(C)(2). "When an impasse occurs, the court is authorized to determine not only the parenting plan element in dispute, but also 'other factors that are necessary to promote and protect the emotional and physical health of the child.'" *Paul E.*, 246 Ariz. at 395, ¶ 26 (quoting A.R.S. § 25-403.02(D)).

¶14     In assessing whether an educational placement serves a child's best interests, a court should consider, among other things, the child's educational needs and performance at each school. *Jordan v. Rea*, 221 Ariz. 581, 590, ¶ 24 (App. 2009). "We will only disturb a ruling premised on a best interests finding if the [superior] court abused its discretion in making that finding." *Mesa v. O'Connor*, __ Ariz. __, __, ¶ 19, 563 P.3d 1179, 1186 (App. 2025); *see also In re Marriage of Friedman and Roels*, 244 Ariz. 111, 120, ¶ 36 (2018).

¶15     Here, the superior court conducted a trial and made specific written findings on the A.R.S. §§ 25-403(A) and -403.01(B) factors. Among other things, the court concluded: (1) the child is bonded to both parents, (2) the child is well-adjusted to the preschool program, (3) Wife "feels

dismissed when speaking with [Husband] about legal decisions for the child," and (4) Husband believes Wife ignores his efforts to co-parent.

¶16 Weighing the relevant factors, the superior court determined joint legal decision-making—not giving either party final decision-making authority—served the child's best interests. The court then ordered the parties to enroll the child in the daycare/preschool program of their choice during their parenting time, noting the "parents will need to jointly agree to a school beginning in kindergarten."

¶17 The record supports the superior court's implicit finding that the parties reached an impasse concerning the child's educational placement, authorizing the court to resolve the dispute. While remaining at the daycare program may have served the child's best interests before Wife petitioned for divorce, as Husband asserts, continuing with that placement post-dissolution, at least during Wife's parenting time, was not feasible. The parties do not dispute that Wife's work schedule exceeds the daycare's limited hours of operation, and as the court implicitly found, Wife's insistence on enrolling the child in a preschool program that accommodates her work schedule—obviating any need for coordination with and reliance on Husband to manage childcare during her parenting time—was entirely reasonable.

¶18 Although Husband expressed his personal misgivings about exposing the child to a religious faith he does not espouse, he makes no argument sounding in free exercise. *See* U.S. Const. amend. I; Ariz. Const. art. 2, § 12; Ariz. Const. art. 20, § 1. And he has not claimed, much less established, any detriment to the child from her enrollment at the preschool. *Cf. Funk v. Ossman*, 150 Ariz. 578, 581 (App. 1986) ("[C]ourts should maintain an attitude of strict impartiality . . . and should not . . . restrain any person having custody . . . from taking the child[] to a particular church, except where there is a clear and affirmative showing that the conflicting religious beliefs affect the general welfare of the child.") (internal quotation and citation omitted). Nor is there merit to Husband's contention that allowing Wife to enroll the child at the preschool during her parenting time effectively granted her final legal decision-making authority regarding the child's educational placement.

¶19 Given the parties' inability to reach a consensus on the child's educational placement, the superior court ordered an arrangement that permits both parties to select the childcare of their choice. Thus, contrary to Husband's contention, the court's order does not elevate either parent's

preferences over the other. On this record, Husband has shown no abuse of discretion.

## II. Spousal Maintenance

**¶20** Husband contests the superior court's denial of his requests for both pre-decree and post-dissolution spousal maintenance. He contends the court incorrectly found him ineligible for an award.

**¶21** We review a superior court's denial of spousal maintenance for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998). A court abuses its discretion when it commits an error of law in reaching a discretionary conclusion. *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008).

**¶22** In his motion for temporary orders, Husband requested monthly spousal maintenance of $3,400.66. The superior court summarily denied his request. In his pretrial statement, Husband again requested spousal maintenance, seeking $4,200 per month for twelve months and then $2,500 per month for twelve months thereafter.

**¶23** At trial, the parties testified at length concerning their financial circumstances. Wife testified she earned a salary of approximately $257,000 in 2023 and paid $27 per month for the child's health insurance and $1,000 per month for the child's daycare expenses. During her testimony, Wife questioned Husband's affidavit of financial information ("AFI") reporting monthly earnings of approximately $6,000, pointing to his bank statements documenting monthly deposits of approximately $8,735. Wife opined that Husband is ineligible for spousal maintenance because he is "in good health," capable of working, and entitled to "a significant distribution of assets": one-half of the equity in the marital home ($87,500), one-half of her cash bonuses ($22,000), and one-half of her retirement accounts.[1] She also noted that at the time she petitioned for divorce, Husband received one-half of the community's cash savings ($46,000). While acknowledging Husband "stayed home" as the child's primary caregiver, Wife denied that he "compromise[d] his own career," explaining the parties "could have put [the child] into daycare at any point." Indeed, Wife characterized Husband's stay-at-home caregiver role as a "luxury."

---

[1] Neither party nor the superior court clearly identified the value of the retirement accounts allocated to Husband.

¶24  On cross-examination, Wife conceded that Husband's management of the marital household and fulfillment of the primary caregiver role allowed her to focus her efforts on work and "advance [her] career." Despite acknowledging she did not know whether some of Husband's bank deposits, in fact, had been transfers of his share of the community's cash savings rather than income, Wife asserted that Husband's ability to maintain a separate household during the dissolution litigation, without a court order for temporary support, demonstrated he needs no spousal maintenance.

¶25  Husband, for his part, testified that "prior to becoming a stay-at-home parent," he earned approximately $55,000 per year working as a sales associate at a bicycle shop. According to Husband, the parties agreed that he would quit his employment and serve as the child's primary caregiver. In November 2022, Husband began part-time work as a self-employed bicycle salesman—with the child enrolled at daycare during his working hours. When Wife petitioned for divorce, Husband applied for full-time employment with various employers but received no job offers. Given his unsuccessful job search, Husband refocused his efforts on building his own bicycle sales business. Although he reported a gross monthly income of approximately $6,000 on his AFI, Husband testified that figure fails to account for his business expenses, which averaged approximately $2,545 per month. Deducting business expenses, Husband testified he grosses only $3,400 per month, an insufficient amount to cover his reasonable living expenses.

¶26  When asked whether he contributed to Wife's earning capacity, Husband testified that Wife would not "have been able to work the same hours" and travel for work had he not "stayed home" and served as the child's primary caregiver. He also denied Wife's claim that he is self-sufficient, explaining he nearly depleted his share of the community's cash savings over the course of the litigation to pay his attorney's fees and cover his monthly shortfall for his reasonable expenses. While recognizing a need for self-sufficiency, Husband testified he requires additional time to establish and grow his business.

¶27  When considering a request for spousal maintenance, the superior court must first assess the requesting spouse's eligibility. A.R.S. § 25-319(A); *In re Marriage of Cotter and Podhorez*, 245 Ariz. 82, 85, ¶ 7 (App. 2018). In making the threshold eligibility determination, the court considers five factors, any one of which establishes the requesting spouse's statutory eligibility:

1. Lacks sufficient property, including property apportioned to the spouse, to provide for that spouse's reasonable needs.

2. Lacks earning ability in the labor market that is adequate to be self-sufficient.

3. Is the parent of a child whose age or condition is such that the parent should not be required to seek employment outside the home.

4. Has made a significant financial or other contribution to the education, training, vocational skills, career or earning ability of the other spouse or has significantly reduced that spouse's income or career opportunities for the benefit of the other spouse.

5. Had a marriage of long duration and is of an age that may preclude the possibility of gaining employment adequate to be self-sufficient.

A.R.S. § 25-319(A). Only if a court finds the requesting spouse eligible, may it then consider whether an award of maintenance should be granted and, if so, how much. A.R.S. § 25-319(B); *Cotter*, 245 Ariz. at 85, ¶ 7.

**¶28**　　　　Husband argues he is eligible for support under A.R.S. § 25-319(A)(1), (2), and (4) because he lacks sufficient property to provide for his reasonable needs, he lacks the earning capacity to be self-sufficient, and he contributed to Wife's career opportunities and earning ability by serving as the child's primary caregiver—initially as a full-time stay-at-home parent and then working only part-time thereafter. According to Husband, his lack of resources has compelled him—and will continue to compel him—to spend down the property allocated to him to cover his reasonable monthly expenses. The superior court rejected all of Husband's claims and found he failed to meet any of the statutory criteria.

**¶29**　　　　We first consider Husband's eligibility under A.R.S. § 25-319(A)(1)—whether he lacks sufficient property to provide for his reasonable needs. "The legislature has not defined 'sufficient property.'" *Cotter*, 245 Ariz. at 85, ¶ 8. In construing a previous version of A.R.S. § 25-319(A), this court "determined 'sufficient property' mean[s] property 'capable of providing for the reasonable needs of the spouse seeking maintenance,' whether by actively producing income to provide for the spouse's reasonable needs or by being converted into a suitable form so that it would so provide." *Cotter*, 245 Ariz. at 85, ¶ 8 (quoting *Deatherage v.*

*Deatherage*, 140 Ariz. 317, 320 (App. 1984)). Applying this interpretation "for the limited purpose of an eligibility determination, sufficient property is of such value that the spouse would be unlikely to exhaust it in his or her lifetime." *Id.* at 85–86, ¶¶ 9–10 ("[S]ufficient property means property that, standing alone, can provide for a spouse's reasonable needs during his or her lifetime.").

**¶30**        As noted, *supra* ¶ 27, under the current version of A.R.S. § 25-319(A), a spouse is statutorily eligible for spousal maintenance if he qualifies under any subsection. *Id.* at 86, ¶ 10 ("[A] spouse must be ineligible" under each subsection "to be deemed ineligible for spousal maintenance."). Meaning, a spouse lacking sufficient property to provide for his reasonable needs is statutorily eligible for a maintenance award even if he is capable of self-sufficiency "through appropriate employment." *Id.*

**¶31**        As in *Cotter*, here, the superior court recited the relevant statutory factors and determined that Husband failed to "establish[] a statutory basis for entitlement to an award of spousal maintenance." But in so doing, the court made no "specific findings about the value of [Husband's] property, the cost of [his] reasonable needs, or the term for which that property could be expected to provide for those needs before [he] exhausted it." *Cotter*, 245 Ariz. at 87, ¶ 12. Instead, the court simply noted Husband would "be allocated [one-half of] the equity in the home, [one-half of Wife's] retirement, and his percentage of [Wife's] community bonus." Notably, the court also pointed to Wife's admission that Husband cannot presently draw on his community share of her retirement accounts and Husband's testimony that he depleted his share of the community savings to cover his monthly living expenses, without explaining the significance of the parties' testimony. *See Cooper v. Cooper*, 130 Ariz. 257, 261 (1981) (discounting the award of "allegedly valuable assets" to a receiving spouse as a basis to overturn a spousal maintenance award, noting the receiving spouse had to use the assets to support herself during the litigation because no spousal maintenance was provided "prior to the dissolution").

**¶32**        While the parties did not request findings of fact, Ariz. R. Fam. L. P. 82(A), and A.R.S. § 25-319(A) does not require the court to make specific findings, *see Higgins v. Higgins*, 154 Ariz. 87, 88 (App. 1987), the record must still reasonably support the court's eligibility determination. *See Cotter*, 245 Ariz. at 87, ¶ 12; *see also Cooper*, 130 Ariz. at 261 (explaining that while "[t]he question of spousal maintenance is left to the sound discretion of the [superior] court, . . . [t]here must . . . be support in the record for the trial judge's determination"). As reflected in the record, the

property currently available to Husband totals $109,500 ($87,500 home equity + $22,000 bonus = $109,500). Husband testified he depleted his share of the community savings because his current income does not cover his reasonable expenses, and Wife did not meaningfully refute this claim. *See Cotter*, 245 Ariz. at 85–86, ¶ 9 (explaining a spouse lacks sufficient property to provide for his reasonable needs if he must "consume" the property such that when he no longer has any earning capacity, "there would be nothing left" to draw upon) (internal quotation and citation omitted); *see also Cullum v. Cullum*, 215 Ariz. 352, 354, ¶ 11 (App. 2007) (explaining a court should not require a spouse to "use up" the property allocated to her to be eligible for maintenance); *Gutierrez*, 193 Ariz. at 348, ¶ 20 (holding spouse "should not be compelled to withdraw the money in the retirement account to supplement her modest income"). On this record, reasonable evidence does not support a finding that the court allocated to Husband sufficient property to provide for his reasonable needs for the remainder of his life without exhaustion.

**¶33** Because Husband is eligible for spousal maintenance under the low threshold of A.R.S. § 25-319(A)(1), and a showing of any A.R.S. § 25-319(A) factor qualifies a spouse for maintenance, we need not consider Husband's alternative claims that he is also eligible for an award under subsections (2) and (4). *See Cotter*, 245 Ariz. at 85, ¶ 6 n.1. In so holding, we take no position as to the appropriate amount and duration of a spousal maintenance award, or even if any award is warranted after consideration of the A.R.S. § 25-319(B) factors. Rather, we instruct the superior court to "consider the relevant factors, balance the equities between the parties, and exercise its discretion as it deems just." *Cotter*, 245 Ariz. at 87, ¶ 13.

## III. Child Support

**¶34** Husband challenges the superior court's calculation of child support. He contends the court improperly attributed a higher income to him and a lower income to Wife than established by the evidence.

**¶35** We review a superior court's attribution of income to a parent *de novo*. *See Pullen v. Pullen*, 223 Ariz. 293, 295, ¶ 9 (App. 2009). "Questions of what factors to apply to attribute income are legal questions[.]" *Id.*

**¶36** Using the figure Husband reported on his AFI, the superior court attributed to Husband a monthly income of $5,953.21. Despite his self-reporting, Husband claims the monthly income attributed to him fails to account for his business expenses.

¶37 The Arizona Child Support Guidelines ("the Guidelines") define self-employment income as "gross receipts minus ordinary and necessary expenses as determined by the court to be required to produce the income." A.R.S. § 25-320 app. § II.A.1.e. "The Guidelines do not otherwise define ordinary and necessary business expenses." *Baker v. Baker*, 183 Ariz. 70, 71 (App. 1995). We review a superior court's determination whether claimed business expenses qualify as "ordinary and necessary" under the Guidelines for an abuse of discretion. *Id.* at 71–73.

¶38 As noted, *supra* ¶ 25, Husband acknowledged earning income of approximately $6,000 per month but testified he incurs monthly business expenses of approximately $2,545, leaving him with a monthly gross income of only $3,455 under the Guidelines. To support his gross income calculation, Husband points to bank statements and a "catalog" of his business expenses submitted as exhibits at trial. The bank statements exhibits consist of more than 100 pages of unannotated expenditures and the business expenses exhibit consists of 169 pages of a mile tracker program, reflecting $5,627.87 in mileage expenses over six months, and 11 pages of various invoices totaling $2,121.35 (consisting of $1,163.63 in equipment and athletic gear purchases and $957.72 in gas, restaurant, ride-sharing, and airline ticket expenses).

¶39 The Guidelines do not task the superior court with combing through the record and conducting an accounting to determine whether sufficient evidence supports a claim of qualifying ordinary and necessary business expenses. Rather, the party claiming a gross income reduction premised on ordinary and necessary business expenses bears the burden of presenting supporting evidence in a clear and straight-forward manner. *See Baker,* 183 Ariz. at 73 ("A party is responsible for making certain the record contains all . . . documents necessary for us to consider the issues raised[.]"); *see also Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, 326, ¶ 2 n.2 (App. 1998).

¶40 Here, without question, Husband failed to substantiate his claim of reasonable business expenses "total[ing] $20,360.00 over the applicable timeframe." Given the lack of supporting evidence, the superior court acted well within its discretion by implicitly finding Husband failed to establish any ordinary and necessary business expenses justifying a reduction of his reported gross income. Notably, and contrary to Husband's apparent contention, the court also rejected Wife's unsubstantiated claim that Husband's bank statements demonstrate he underreported his gross income.

¶41　　　　Husband also challenges the superior court's attribution of a monthly income of $21,455.65 to Wife. Pointing to Wife's 2023 W-2, listing her "Medicare wages and tips" income as $279,967.82, and her pretrial statement, acknowledging an expected salary of approximately $280,000 in 2024, Husband asserts the record establishes Wife has a monthly income of $23,333.33. For her part, Wife acknowledges she earned income of $279,967.82 in 2023. Yet, in attributing income to Wife, the court considered only Wife's base salary for 2023, deducting her $22,500 in bonuses for the year.

¶42　　　　For purposes of calculating child support, income encompasses "income from any source," including bonuses. Guidelines § II.A.1.b. Accordingly, we vacate the superior court's child support order and remand for a recalculation based on an attribution of a monthly income of $23,330.65 ($279,967.82/12 months) to Wife. Because spousal maintenance is a factor in determining child support, the court's recalculation should account for its findings and determinations concerning spousal maintenance, as necessary. Although we take no position on the matter, we also instruct the superior court on remand to consider, as requested by Husband but not directly addressed in the decree, whether the temporary support orders—no spousal maintenance and an award of $633 in monthly child support to Husband—warrant reassessment. *See Huey v. Huey*, 253 Ariz. 560, 565, ¶¶ 18–20 (App. 2022) (noting courts' discretion to modify temporary support orders retroactively); *see also Maximov v. Maximov*, 220 Ariz. 299, 301, ¶¶ 7–8 (App. 2009) ("[T]he family court retains its authority to modify temporary support nunc pro tunc.").

## IV.　Attorney's Fees

¶43　　　　Husband appeals the superior court's denial of his request for attorney's fees. Without identifying the amount he incurred, Husband contends that his attorney's fees are substantially greater than the $5,000 retainer paid by Wife on his behalf at the start of the litigation.

¶44　　　　Section 25-324 authorizes an award of attorney's fees after considering both parties' financial resources and the reasonableness of their positions throughout the proceedings. We review a superior court's ruling on an attorney's fees request under A.R.S. § 25-324 for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014).

¶45　　　　Considering both prongs of A.R.S. § 25-324, the superior court found: (1) a substantial disparity of resources between the parties, with Wife having "considerably more resources available" than Husband, and

13

(2) neither party acted unreasonably during the litigation. Despite these findings, the court denied Husband's request for attorney's fees and costs, pointing to Wife's payment of Husband's $5,000 retainer at the start of the litigation.

**¶46**      While financial "disparity alone does not mandate an award of fees" and a superior court has "discretion to deny a fee request even after considering both statutory factors," *Myrick*, 235 Ariz. at 494, ¶ 9, we set aside the denial of Husband's request for attorney's fees and costs to allow the court to reassess whether — given the merits of Husband's legal arguments concerning spousal maintenance — a fee award is appropriate.

## CONCLUSION

**¶47**      For the foregoing reasons, we vacate the spousal maintenance and child support orders, as well as the denial of Husband's request for attorney's fees and costs. On those matters, we remand for reconsideration. We affirm the decree of dissolution of marriage in all other respects.

**¶48**      Both parties request an award of attorney's fees on appeal under A.R.S. § 25-324. In the exercise of our discretion, we decline to award either party attorney's fees. Because Father is partially successful on appeal, he is entitled to recover his taxable costs on appeal upon compliance with ARCAP 21. *See Henry v. Cook*, 189 Ariz. 42, 44 (App. 1996) (noting under A.R.S. § 12-341, "the party who obtains partial success is entitled to recover all taxable costs").



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR